April JACKMAN, Appellant,

v.

JEWEL LAKE VILLA ONE, A Limited Partnership; James W. Wong; Resolution Management, L.L.C., an Alaska Limited Liability Company, Appellees.

No. S–11715.

Supreme Court of Alaska.

Nov. 2, 2007.

---

Benjamin I. Whipple, Palmer, for Appellant.

Matthew D. Regan and Erin K. Egan, Holmes Weddle & Barcott, PC, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

April Jackman fell and injured herself on a staircase at her apartment complex, the Jewel Lake Villa Apartments. After Jackman received medical treatments for her injuries, one of Jewel Lake's insurers paid $3,474 to cover these expenses. Jackman later sued Jewel Lake for failing to maintain the staircase. Jewel Lake sent Jackman a $1,400 offer of judgment, but she failed to accept the offer and her case went to trial. The jury found that Jackman's damages totaled $7,147.23 and that Jewel Lake bore fifty-one percent of the fault. Jewel Lake moved for

enhanced attorney's fees under Civil Rule 68 claiming that its offer of judgment exceeded the jury's verdict. To determine the value of the verdict in comparison to the pretrial offer, the superior court first reduced the total amount awarded to reflect Jewel Lake's fifty-one percent share of the damages; it then subtracted from this amount the advance medical expenses paid by Jewel Lake's insurer. This yielded a net final judgment lower than the pretrial offer, so the court awarded enhanced fees to Jewel Lake. Jackman appeals this award. We reverse. Jewel Lake's insurer apparently paid Jackman's expenses unconditionally, without any indication that it based the payments on Jewel Lake's potential fault. Because Jewel Lake failed to establish the payments' actual basis, we hold that, for purposes of applying Rule 68, the payments should have been treated as reducing the jury's total award of damages, not just the damages reflecting Jewel Lake's share of the fault. Since this method results in a judgment more favorable than Jewel Lake's pretrial offer, we remand for entry of a modified judgment.

## II. FACTS AND PROCEEDINGS

The basic facts of this case are undisputed. April Jackman injured herself when she slipped and fell on an icy stairway in the Jewel Lake Villa Apartments, the apartment complex where she resided. Jackman's injuries required medical treatment; Jewel Lake's insurers paid Jackman a total of $3,474 to reimburse her expenses. These reimbursements appear to have been paid unconditionally; nothing in the record suggests that they were based on Jewel Lake's potential fault for the accident.

Jackman later sued the owners and managers of the Jewel Lake Villa Apartments (collectively "Jewel Lake"), alleging that they negligently caused the accident by failing to keep the stairway free of snow and ice. Her complaint sought to recover damages exceeding $75,000 for past and future medical expenses, lost wages, and diminished earning capacity.

After the parties conducted discovery, Jewel Lake made an offer of judgment to Jackman, proposing "to allow entry of judgment for plaintiff April L. Jackman in this action for ONE THOUSAND FOUR HUNDRED DOLLARS AND ZERO CENTS ($1,400.00), inclusive of Rule 82 attorney's fees, allowable costs and pre-judgment interest." Jackman did not accept the offer, and the case proceeded to a jury trial.

Before trial Jewel Lake moved to offset the medical expenses it had already paid from any judgment amount determined by the jury. Jackman opposed this motion as premature, arguing that the jury should be allowed to determine the full extent of her damages and that the medical payments should be deducted from the judgment based on the jury's verdict. "To allow an offset of judgment now," Jackman contended, "would distort in defendants' favor the potential judgment amounts on which the parties have based offers of judgment." Jewel Lake did not oppose Jackman's request to postpone the deduction, and the superior court adopted this approach, ruling that, if the jury reached a verdict for Jackman, "the judgment amount shall be offset by the amount of prior payment made to the plaintiff by the defendants' insurer for the plaintiff's medical treatment and expenses."

After hearing the evidence at trial, the jury returned a verdict finding that Jewel Lake and Jackman were both negligent; the verdict apportioned fifty-one percent of the fault to Jewel Lake and forty-nine percent to Jackman. The verdict also found that Jackman had suffered total damages of $7,147.23. Accordingly, Jewel Lake's liability for its proportionate share of the fault totaled $3,645.09—fifty-one percent of $7,147.23.

Jewel Lake moved for attorney's fees under Alaska Civil Rule 68.[1] Under this rule, a party whose pretrial offer of judgment is

---

1. Alaska Rule of Civil Procedure 68 provides in part:

    (b) If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, or, if there are multiple defendants, at least 10 percent less favorable to the offeree than the offer, the offeree, whether the party making the claim or defending against the claim, shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror from the date the offer was made . . . .

rejected becomes entitled to claim a specified percentage of its attorney's fees,[2] payable from the time of the offer, "[i]f the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer."[3] Jewel Lake argued that the $3,474 payment for medical expenses should be set off from the jury verdict against it in order to arrive at a final judgment for the purposes of Rule 68. Considering the $3,474 in advance medical payments and the additional $1,400 cash offer that Jackman would have received if she had accepted the offer, Jewel Lake contended that the jury's verdict left her with a recovery that was at least five percent less favorable than the offer of judgment.

Jackman opposed Jewel Lake's Rule 68 motion. Although she did not dispute that her judgment would ultimately need to be reduced to reflect the advance payments she had received for her medical expenses, Jackman insisted that the court should make this deduction only after calculating the full amount of her judgment. In Jackman's view, the medical payments could not properly be considered in comparing the amount of the offer to the amount of her award, since the offer had failed to mention the medical payments: "From the plain terms of the defendants' offer it would have been impossi-

ble for plaintiff to ascertain that defendants intended the 'actual' value of their offer to be $1,400 plus $3,474 more for purposes of a potential Rule 68 motion."

The superior court resolved this dispute in Jewel Lake's favor. In determining that the judgment was less favorable than the offer, the court started with the jury's finding of total damages—$7,147.23. Given the jury's fifty-one percent allocation of fault to Jewel Lake, the court calculated Jewel Lake's proportionate share of the damages to be $3,645.09. Adding projected pretrial interest ($10.35) and attorney's fees ($730.09), the court estimated that Jewel Lake's total liability under the verdict would be $4,380.53. The court next deducted the full amount of the medical expenses already paid by Jewel Lake's insurers ($3,474); this resulted in an outstanding liability of $906.53,[4] which the court described as the maximum amount payable to the plaintiff under the jury's verdict. Comparing this figure to the $1,400 Jackman would have received under the pretrial offer, the court found her recovery at trial to be lower than the threshold required to trigger attorney's fees under Rule 68—a judgment at least five percent less favorable than the offer.[5] For easy reference, we set out the superior court's calculations below:

### Order Regarding Attorney Fees

| | | |
|---|---|---|
| Verdict | = | $7147.23 |
| Defendant's Liability | = | .51 |
| | | $3645.09 |
| Interest    =    .05 × 1.21 × [3645.09–3474 = 171.09] | | |
| | | 10.35 |
| Verdict + Prejudgment Interest | = | $3650.44 |
| Rule 82 Attorney Fees | | .20 |
| | | $ 730.09 |
| Verdict, interest, attorney fees | | $4380.53 |
| Less set off | | $3474.00 |

2. Under Alaska Rule of Civil Procedure 68(b)(1)-(3), the amount of allowable fees varies depending on the timing of the offer. The variations are irrelevant here.

3. When a case involves multiple defendants, Rule 68(b) requires the rejecting offeree to fare worse than the offer by at least ten percent. Alaska R. Civ. P. 68(b). Here, although Jackman's action named multiple individuals and business entities as defendants, the parties agreed to treat all the defendants as a single entity, so the rule's five percent threshold applies.

4. This amount appears in the original superior court order and reflects a five-dollar mistake: the correct sum of the projected pretrial interest and Jewel Lake's share of damages is $3,655.44. Because this mistake had no effect on the superior court's decision and is immaterial here as well, we retain the uncorrected sum in this illustration.

5. Alaska R. Civ. P. 68(b).

| | |
|---|---|
| Maximum amount of payable to plaintiff per verdict | = $ 906.53 |

| | |
|---|---|
| Rule 68 Offer | = $1400.00 |
| | .10 |
| | $140.00 |
| 10% less favorable | $1260.00 |
| 5% less favorable | $1330.00 |

Based on these calculations, the superior court granted Jewel Lake's motion for attorney's fees and costs under Rule 68. The court ultimately awarded Jewel Lake $24,746 in attorney's fees and $1,188.97 in costs. This yielded a final judgment for Jewel Lake totaling $25,934.97 and a final judgment for Jackman of $181.44.

Jackman appeals.

## III. DISCUSSION

■ On appeal, Jackman challenges the superior court's ruling that Jewel Lake was entitled to attorney's fees under Rule 68 because its offer of judgment exceeded Jackman's judgment at trial. Because "Jewel Lake's offer ... contained no mention of credit for advance payment" of her medical expenses, Jackman reasons that "it was error for the trial court to have essentially modified the terms of the offer by reducing the judgment by the amount of advance payments before making the Rule 68 comparison."

Jewel Lake responds that its pretrial offer of judgment implicitly called for payment in addition to the medical expenses that had already been reimbursed: "The Offer of Judgment itself already included an offset for the funds advanced. The parties understood that if Jackman accepted the offer she would receive $1,400 in 'new money.'". Even though the offer failed to specify that the advance funds would be credited as an offset against any judgment received by Jackman, Jewel Lake insists that the offset was proper. While acknowledging that this point has not been squarely addressed in Alaska, Jewel Lake points to cases from other jurisdictions that support its proposition.[6]

■ These arguments require us to determine the meaning of Jewel Lake's offer of judgment and the proper method for calculating the comparative values of the offer and Jackman's judgment for purposes of applying Rule 68. Questions concerning an offer of judgment's meaning and whether the offer complies with Rule 68 raise issues of law, which we review independently.[7]

As indicated above, Jackman's initial premise is that Jewel Lake's offer of judgment could not reasonably be construed as a "new money" offer—that is, as an offer of $1,400 in addition to any advance medical payments Jackman had already received from Jewel Lake's insurers—because the offer failed to mention advance payments. But this premise fails under *Rules v. Sturn.*[8] There, the defendant made a lump-sum offer plus interest, costs, and Rule 82 attorney's fees, but failed to mention advance payments that had already been made.[9] After the plaintiff accepted the offer and the superior court entered a judgment reflecting the lump-sum offer, the defendant attempted to reduce the judgment by subtracting the amount of previously paid medical expenses.[10] We rejected the attempt as improper under Rule 68, holding that an offer of judgment that remains silent as to prior payments will ordinarily not be subject to an implied offset.[11] In other words, it must be deemed to be a new-money offer.

6. Specifically, Jewel Lake cites *Russell v. Ashe Brick Co.*, 267 S.C. 640, 230 S.E.2d 814, 815 (1976) for the proposition that "[t]he nonexistence of a receipt delineating the obvious desire to credit the payment against any future liability secured on the same claim is without legal significance."

7. *Jaso v. McCarthy*, 923 P.2d 795, 801 (Alaska 1996).

8. *Rules v. Sturn*, 661 P.2d 615 (Alaska 1983).

9. *Id.* at 616.

10. *Id.*

11. *Id.* at 617–18.

In light of *Rules,* Jewel Lake's offer of judgment must be viewed as an unambiguous proposal to pay Jackman $1,400 in addition to any medical payments she might have received from Jewel Lake's insurers. But while the offer's silence concerning the medical payments creates no ambiguity as to the offer's value, it generates uncertainty as to the proper method for crediting those payments in applying Rule 68's directive to compare the offer's value against the value of the "judgment finally rendered" by the court.[12] As Jewel Lake acknowledges, the point has never been directly resolved in Alaska.

Jackman insists that this uncertainty should be resolved by ignoring the advance payments completely for purposes of applying Rule 68. But this approach makes little sense. It is undisputed that Jackman received the advanced payments from Jewel Lake's insurer and that those payments compensated her for injuries included in her pending lawsuit—injuries she suffered when she slipped and fell on the Jewel Lake staircase. Jackman thus had no right to recover these medical expenses again as part of the jury's award; nor did she have any legitimate basis for including those payments in calculating her awards of prejudgment interest, costs, and attorney's fees. For these reasons, it was proper to deduct the advance payments from Jackman's award before comparing her judgment to the pretrial offer for purposes of determining Jewel Lake's right to attorney's fees under Rule 68.

The more difficult problem here lies in determining the correct method for deducting the advance payments from the jury award in order to compare the award to the pretrial offer. Here, as illustrated by the superior court's calculations set out in our statement of facts, the court initially divided the full jury award, $7,147.23, to derive Jewel Lake's fifty-one percent share of the damages: $3,645.09. After adjusting for interest, costs, and attorney's fees, the court subtracted the full amount of the advance medical payments from Jewel Lake's share of the damages to arrive at a "maximum amount ... payable" of $906.53 under the verdict.

Comparing this estimate of Jackman's maximum final judgment to Jewel Lake's pretrial offer of $1,400 in new money, the court concluded that Jackman fared substantially worse by going to trial, thus entitling Jewel Lake to enhanced attorney's fees and costs under Rule 68.

The trial court's approach treated the medical expense payments as pure liability payments—payments meant to compensate Jackman only for Jewel Lake's proportionate share of the fault. Yet as we noted at the outset of this opinion, the record fails to disclose the specific basis for the medical payments. Jewel Lake's insurer appears to have unconditionally reimbursed Jackman for her medical expenses: there is no indication of any reservations or restrictions suggesting that the reimbursements were paid as compensation for Jewel Lake's potential share of the fault. Absent evidence establishing the actual basis for the insurer's payments, we see no obvious grounds for crediting the entire amount of the advance payments against the portion of the jury verdict reflecting Jewel Lake's share of the fault. As the party asserting a claim for enhanced fees under Rule 68, Jewel Lake bore the burden of supporting its claim.

Jewel Lake contends that Jackman waived this point by failing to object to the superior court's specific method of calculating the offset. We disagree. Jackman's arguments below called into question the proper method under Rule 68 for crediting "old money" payments when a "new money" offer of judgment fails to address the subject. As Jewel Lake acknowledges, this question has never been squarely raised in Alaska and remains undecided. Because the proper method of calculation under Rule 68 presents an unresolved question of law, the parties' opposing views on the point do not confine our decision. Instead, "[o]ur duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[13] Accordingly, we reject the claim of waiver and turn to the question whether the trial

---

**12.** *See* Alaska R. Civ. P. 68(b).

**13.** *Guin v. Ha,* 591 P.2d 1281, 1284 n. 6 (Alaska 1979).

court correctly deducted the entire amount of the advance medical payments from the portion of damages reflecting Jewel Lake's share of the total fault.

■ Jewel Lake proposes two justifications for the superior court's approach. First, Jewel Lake insists that the superior court needed to deduct the advance payments from Jewel Lake's share of the total damages in order to protect Jewel Lake against paying more than its fair share of the damages as determined by the jury's allocation of fault. To be sure, Alaska law requires personal injury damages to be apportioned on the basis of comparative fault;[14] but it hardly follows that an insurer's unconditional and unexplained reimbursements of medical expenses should routinely be treated as having been paid on account of the defendant's fault. Because it is not self-evident that such payments will invariably represent future damages awardable in an "action based on fault,"[15] we see no justification for assuming that they necessarily reflect the defendant's potential share of the fault. Absent case-specific evidence establishing that the payment in question was actually based on potential fault, then, it simply lowers the total damages still to be paid, leaving all negligent parties responsible for their proportionate share of the harm.

Second, Jewel Lake suggests that deducting advance payments from its share of the verdict was necessary to prevent a double recovery by Jackman. Yet deducting advance payments from the jury's total award poses a risk of double recovery only if we assume that those payments were made on the basis of the defendant's potential fault. In any other case, the deduction prevents the plaintiff from recovering twice by lowering the defendant's share of the award as well as the plaintiff's. Barring some evidence showing that the advance payments actually reflected the defendant's potential share of the fault, then, the danger of double recovery does not justify deducting such payments exclusively from the defendant's share of the damages.

In short, both of Jewel Lake's proposed justifications mistakenly assume that an insurer's unconditional advance payments of medical expenses must necessarily be payments based on fault. Here, the trial court record shows only that, before litigation commenced, one of Jewel Lake's insurers unconditionally paid for medical expenses incurred by Jackson as a result of her accident. In this situation, without additional information establishing the actual basis for the insurer's advance payments, the record provides no solid ground for assuming that the payments covered only those limited portions of Jackman's expenses reflecting Jewel Lake's potential share of fault for her accident; nor does the record provide a sound reason to fear that either double recovery or double payment would result if the payments were credited—as the record suggests they should be—against the total damages Jackson sustained.

■ For these reasons, we hold that when a defendant seeking Rule 68 fees claims an offset for medical expenses paid to the plaintiff without reservation or restriction before suit was filed, the advance payments must be deducted from the total award of damages to establish the final judgment's comparative value unless the defendant shows that the payments actually compensated the plaintiff for liability based on the defendant's fault.[16]

---

**14.** AS 09.17.060 ("In an action based on fault seeking to recover damages for injury or death to a person or harm to property, contributory fault chargeable to the claimant diminishes proportionately the amount awarded as compensatory damages for the injury attributable to the claimant's contributory fault, but does not bar recovery.").

**15.** *See id.*

**16.** We note by analogy that this approach is similar to methods adopted in other jurisdictions for offsetting funds paid under statutorily re-

quired no-fault medical payments policies. *See Norman v. Farrow,* 880 So.2d 557, 559–61 (Fla. 2004) (requiring offset for no-fault benefits before reduction by the percentage of the plaintiff's fault because plaintiff barred by statute from recovering damages in personal injury accident for expenses payable under no-fault policy); *Hickenbottom v. Schmidt,* 626 P.2d 726, 727 (Colo.App.1981) (deducting payable personal injury protection benefits from total damages award before reducing judgment by percentage of plaintiff's comparative negligence).

Applying this method here results in a judgment for Jackman that exceeds Jewel Lake's $1,400 offer of judgment.[17] Accordingly, we vacate the judgment, reverse its order awarding Rule 68 fees to Jewel Lake, and remand the case for entry of a modified judgment consistent with this opinion.

## IV. CONCLUSION

We VACATE the final judgment, REVERSE the award of attorney's fees and costs to Jewel Lake, and REMAND for entry of judgment in Jackman's favor.

CARPENETI, Justice, concurring.

I agree with the result of today's opinion, but I disagree with its reasoning. For that reason, I write separately to explain how I would resolve this case.

Today's result—reversal of the award of attorney's fees and costs to Jewel Lake and entry of judgment in favor of Jackman—is correct because Jewel Lake's offer of judgment did not clearly specify how the previous medical payments made on behalf of Jewel Lake should be treated for Rule 68 purposes. This ambiguity, under our law, is charged against Jewel Lake, the offeror. Accordingly, the medical payments should not be offset for Rule 68 purposes. Without offset, Jewel Lake's offer of judgment was plainly inferior to the jury verdict, and thus Jewel Lake is not the prevailing party under Rule 68.

The key point in this analysis is that Jewel Lake's failure to specify whether the earlier payments were part of its offer of judgment redounds to Jewel Lake's detriment. In *Rules v. Sturn*[1] we held that an ambiguous offer is strictly construed against the offering party.[2] In upholding the trial court's decision to disallow offset of earlier payments from the Rule 68 offer of judgment, we noted that "the [offeror]'s offer of judgment mentions nothing about advance payments made or about offsetting them against any part of the offer, and that the offer does not otherwise indicate an intent by the offerors to offset payments already made."[3] Accordingly, we upheld the trial court's refusal to offset. We have also held, in *Thomann v. Fouse*,[4] that a plaintiff is not required to gamble on the meaning of an ambiguous settlement offer.[5] *Thomann* is significant for purposes of this case, for there the defendant's offer specifically notified the plaintiff that it consisted of "new money"—the kind of specificity lacking in Jewel Lake's offer—but it added that this "new money" was "offered in addition to the medical payments which have been assumed by Defendant Fouse's insurance carrier *for resolution in a subsequent arbitration.*"[6] We held that the un-

---

**17.** A rough estimate of the comparative values (without allowing for pretrial interest, attorney's fees or costs on the judgment finally rendered for Jackman) is as follows:

|  | Corrected Calculation |
| --- | --- |
| Total Damages Found by Jury | $7147.23 |
| Reduction by Amount of Advance Medical Payments | − $3474.00 |
| Subtotal | $3673.23 |
| Reduction of Total Unpaid Damages To Reflect Jewel Lake's 51% of Fault | × .51 |
| Estimated Value of Total Judgment for Jackman (not including her prejudgment interest or costs & fees | $1873.34 |
| Subtract Value of Jewel Lake's Offer of Judgment | − $ 1400 |
| **Comparative Value of Judgment Over Offer** | + $473.34 |

**1.** 661 P.2d 615 (Alaska 1983).

**2.** *Id.* at 617.

**3.** *Id.*

**4.** 93 P.3d 1048 (Alaska 2004).

**5.** *Id.* at 1051 ("[W]e do not think it fair to expect [offeree] to gamble on this assumption [that pending arbitration was irrelevant to the claim].").

**6.** *Id.* at 1049 (emphasis in original).

derlined language rendered the offer too indefinite: "the presence of this detail invited confusion and could reasonably have led [plaintiff] to wonder what effect the 'subsequent arbitration' might have had on her medical claim."[7] Because the offer's ambiguity created uncertainty for the plaintiff, we held that "it failed to meet the requirements of Rule 68 and could not support an award of costs and attorney's fees in favor of [the offeror]."[8]

Jewel Lake's offer of judgment was far more uncertain than Fouse's offer. It made no mention of the earlier payments. It did not state that it was in addition to payments already made on its behalf. Jewel Lake acknowledges that no writing clarified whether the earlier payments would be credited to any judgment obtained by Jackman. Indeed, Jewel Lake did not claim any offset until it moved for offset of the judgment over five months after making the offer of judgment to Jackman. Thus, Jackman had no indication of Jewel Lake's intentions regarding offset at the time of the offer.[9] It is not even clear that Jackman's attorney was aware of all the payments or their total amount at the time of the making of the Rule 68 offer. Because Jewel Lake created ambiguity in its offer to Jackman, we construe that ambiguity against Jewel Lake. Thus, the settlement offer must be read in favor of Jackman for the purposes of Rule 68 calculations.

Instead of this straightforward approach to resolving this case, today's opinion is based on the questionable hypothesis that "Jewel Lake's insurer apparently paid Jackman's expenses unconditionally, without any indication that it based the payments on Jewel Lake's potential fault."[10] I respectfully suggest that this approach defies both common sense and the common law.

It defies common sense because there is no reason to think that the defendant's insurer was making payments to the injured plaintiff for any reason *other* than to cover its insured's potential fault. (The court certainly provides no hint of any other reason for such a phenomenon.) Indeed, it admits as much, when it states: "It is undisputed that Jackman received the advanced payments from Jewel Lake's insurer and that those payments compensated her for injuries included in her pending lawsuit-injuries she suffered when she slipped and fell on the Jewel Lake staircase."[11]

And the opinion is a stark departure from the common law which credits defendants fully for payments made by themselves or their insurance companies regardless of whether the payments were medical payments or payments based on predicted liability. Today's opinion distinguishes between "pure liability payments" and "unconditional[ ] reimburse[ment] for ... medical expenses" made by Jewel Lake's insurer.[12] The court suggests that absent evidence establishing the "actual basis for the insurer's payments" there are no "obvious grounds" for crediting the entire amount of the advance payments against Jewel Lake's share of the fault. This approach is at odds with the common law.

The Commentary to the Restatement (Second) of Torts explains:

> Payments by or for defendant. If a tort defendant makes a payment toward his tort liability, it of course has the effect of reducing that liability. This is also true of *payments made under an insurance poli-*

---

**7.** *Id.* at 1051.

**8.** *Id.* at 1052.

**9.** Indeed, this is the precise objection that Jackman made before the superior court to Jewel Lake's motion for attorney's fees under Rule 68:

> [Defendants'] offer made *no* mention that from this stated amount of $1,400 the value of their prior medical payments should be added for purposes of a Rule 68 calculation. From the plain terms of defendants' offer it would have been impossible for plaintiff to ascertain that

defendants intended the "actual" value of their offer to be $1,400 plus $3,474.00 more for purposes of a potential Rule 68 motion.

**10.** Opinion at 175 ("These reimbursements appear to have been paid unconditionally; nothing in the record suggests that they were based on Jewel Lake's potential fault for the accident."); *see also id.* at 178 ("the record fails to disclose the specific basis for the medical payments").

**11.** Opinion at 178.

**12.** Opinion at 178.

cy that is maintained by the defendant, whether made under a liability provision or without regard to liability, as under a medical-payments clause. This is true also of a payment by another tortfeasor of an amount for which he is liable jointly with the defendant or even by one who is not actually liable to the plaintiff if he is seeking to extinguish or reduce the obligation. (See § 885).[13]

While the Restatement does not mention payments by the defendant (or by another on his or her behalf) in the specific context of comparative liability, there is no reason that offset should not apply in a comparative negligence situation, given the Restatement's equal treatment of payments whether made under a liability policy or under a medical-payments clause. Therefore, just as payments made under a liability policy would be credited fully to a defendant, payments under a medical-payments clause should be as well.

The two cases relied on by the court, *Norman v. Farrow*[14] and *Hickenbottom v. Schmidt*,[15] are inapposite. They involved personal injury protection (PIP) benefits which were not paid from the pockets of (or on behalf of) the defendant tortfeasors.[16] They were therefore collateral source payments rather than prior payments by (or on behalf of) the defendant. Furthermore, statutes in both Florida (*Farrow*) and Colorado (*Hickenbottom*) established that the payments could not be recovered by plaintiffs in

litigation, and thus must be offset.[17] There is no similar statute here.

Finally, the court's approach creates the risk of consequences that would ill serve the administration of justice in Alaska. We have long held that the purpose of Civil Rule 68 is to encourage early settlement of disputes.[18] Early medical payments for injured plaintiffs would certainly assist early settlement of disputes. But even a hypothetically purely generous insurer of a potential defendant may become involved in litigation, and will want to receive full credit for payments made in respect of its insured's potential liability. Giving the payor less than full credit for "unconditional" payments, as the court does today, may put such a burden on the insurer—to specify that each payment is in respect of its insured's potential liability—as to discourage early payment.

In the final analysis, perhaps the only practical difference between the court's approach and mine is in the number of clarifying qualifications the defendant, its insurer, or its counsel, must make. Under the court's approach, each pre-settlement or pretrial payment must be accompanied by notice that it was "based on [defendant]'s potential fault for the accident," [19] or some such qualification. Under my approach, only one notification—in the Rule 68 offer—would be necessary. Perhaps this difference is insignificant. But given Alaska's preference for early payment and early settlement, it seems prefera-

---

**13.** RESTATEMENT (SECOND) OF TORTS § 920A cmt. a (1979) (emphasis added). Note that while AS 09.17.070 abrogated the common law rule with respect to offsets from collateral sources which are discussed in this section of the Restatement, nothing in the Alaska statutes appears to have upset the common law rule regarding payments from non-collateral sources such as are at issue here.

**14.** 880 So.2d 557 (Fla.2004).

**15.** 626 P.2d 726 (Colo.App.1981).

**16.** The language of both *Farrow* and *Hickenbottom* makes this clear. In *Farrow* the court cited the statute directing how recovery for tort claims is impacted by "an insured plaintiff's receipt of PIP benefits" and stated, "[the statute] dictates that an insured plaintiff has 'no right to recover' damages paid or payable by PIP benefits." 880 So.2d at 559–60. In *Hickenbottom* the court

similarly noted that the Colorado statute "provides that an injured party is precluded from recovering damages from a tortfeasor which are recoverable as direct benefits under [the PIP statute]." 626 P.2d at 727. Furthermore, the use of the descriptors "insured plaintiff" in *Farrow* and "direct benefits" in *Hickenbottom* is additional evidence that the courts in those cases were considering payments from a source tied to the plaintiff and wholly collateral to the defendant tortfeasor.

**17.** *Farrow*, 880 So.2d at 558; *Hickenbottom*, 626 P.2d at 727.

**18.** *See Miklautsch v. Dominick*, 452 P.2d 438, 441 (Alaska 1969); *accord Continental Ins. Co. v. U.S. Fid. & Guar. Co.*, 552 P.2d 1122, 1125–26 (Alaska 1976).

**19.** Opinion at 175.

ble to keep the burden on the maker of a Rule 68 settlement offer to speak clearly rather than placing it on the maker of multiple ameliorative payments.

Jewel Lake had the obligation to say exactly what its Rule 68 offer included. It did not do so. Because its offer was ambiguous, and because Jewel Lake under our case law must bear the burden of its offer's ambiguity, I believe that the superior court's order on attorney's fees should be reversed. I therefore concur in today's result. But I would not reach that result on the legal fiction that the payments to Jackman were made for anything other than to cover Jewel Lake's potential fault.

Thus, I concur with the holding but not the reasoning of today's opinion.