*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| DIXIE D. DIXON, | ) | |
| | ) | Supreme Court No. S-14313 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-07-10604 CI |
| v. | ) | |
| | ) | O P I N I O N |
| JOSHUA PAUL BLACKWELL, | ) | |
| | ) | No. 6771 – March 29, 2013 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: William H. Ingaldson, Ingaldson, Maassen & Fitzgerald, P.C., Anchorage, for Appellant. Jimmy E. White, Hughes Gorski Seedorf Odsen & Tervooren, LLC, Anchorage, for Appellee.

Before: Carpeneti, Chief Justice, Fabe, Winfree, and Stowers, Justices, and Matthews, Senior Justice.*

MATTHEWS, Senior Justice.
WINFREE, Justice, concurring.

I.      INTRODUCTION

Dixie Dixon was injured in an automobile accident when a car driven by Joshua Paul Blackwell ran a red light. She sued and received a verdict that was lower

---

\*      Sitting by assignment made under article IV, section 11 of the Alaska Constitution and Alaska Administrative Rule 23(a).

than Blackwell's Alaska Civil Rule 68 offer of judgment. On appeal she challenges the adequacy of the verdict and the efficacy of the offer of judgment. We affirm.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Dixon was injured in an accident on February 14, 2006, as a result of being hit by a car driven by Blackwell. Blackwell admitted liability for the accident. Dixon received medical treatment for various ailments for several years after the accident. She ultimately claimed that nearly $200,000 of her medical expenses were related to the accident.

Dixon had auto insurance through State Farm and had other health insurance through Premera Blue Cross Blue Shield of Alaska and Alaska Laborer's Trust. Dixon's State Farm policy had medical payments coverage of $100,000, under which State Farm paid $29,699.24 of her medical expenses. State Farm decided that her other medical expenses were unrelated to the accident and did not pay them.

Dixon requested arbitration with State Farm, claiming that her other medical expenses were covered. Dixon and two doctors who performed independent medical exams on her were deposed in connection with the arbitration. State Farm also provided automobile liability insurance for Blackwell. State Farm's medical payments adjuster on the Dixon policy wrote to State Farm's liability adjuster on the Blackwell policy on August 1, 2007, requesting reimbursement of the $29,699.24 paid in medical expenses that State Farm had determined were related to the accident.

### B.     Proceedings

Dixon filed a complaint against Blackwell on October 9, 2007, and withdrew the request for arbitration with State Farm. The same attorney who represented State Farm in the arbitration represented Blackwell in the superior court.

In his answer to the complaint, Blackwell asserted that Dixon was not entitled to seek medical expenses that had been paid by her insurer to the extent that the insurer had instructed her not to seek recovery of those expenses in the lawsuit. Two days after filing the answer, November 29, 2007, he served an offer of judgment that provided:

> Defendant Joshua Paul Blackwell, pursuant to Civil Rule 68, hereby offers to allow entry of judgment in favor of Plaintiff Dixie D. Dixon in this action for a total sum of TWENTY-EIGHT THOUSAND EIGHT HUNDRED SEVENTY-EIGHT DOLLARS AND EIGHTY-THREE CENTS ($28,878.83), plus Civil Rule 79 costs, pre-judgment interest as of the date of this offer, and Civil Rule 82(b)(1) attorney fees. In addition, Defendant will assume responsibility for the State Farm Medical Payments lien arising from Ms. Dixon's post-accident treatment. Plaintiff will assume responsibility for any and all liens relating to the subject accident other than the aforementioned State Farm Medical Payments lien. This offer of judgment will result in the dismissal of this action with prejudice. This is an offer of compromise only, and is not to be construed as an admission.

Dixon did not accept the offer.

Trial was held in January of 2011. At trial, the jury heard testimony and viewed depositions from numerous physicians. Dr. John Duddy testified that the knee injuries Dixon had sustained in the accident had cleared up as of an MRI taken on July 12, 2006. Dixon presented evidence of medical expenses totaling $196,208.72, including the medical expenses that had been paid by State Farm under her Medical Payments coverage.

In his closing statement, Blackwell's attorney stated:

Ms. Dixon had the bruise on her knee and Ms. Dixon had the cervical issue, the minor cervical strain, and the aggravation of her interstitial cystitis and [Blackwell]'s here to tell you

my fault, okay. Do what's right with regard to the injuries she sustained in the accident, but that's all. Past medical expenses. Here's the chart that Mr. Ingaldson showed you. There's the first page. It shows that she's got almost $200,000 in medical expenses.

He then listed a series of medical expenses that occurred between the accident and July 12, 2006, the point when, Dr. Duddy testified, Dixon's MRI showed no lingering effects from the accident. Blackwell's attorney compared the total of these expenses, $17,955, to the amount Dixon was requesting, nearly $200,000. Dixon claims that in this portion of the closing statement, Blackwell's attorney conceded that the $17,955 in expenses were related to the accident. Blackwell claims that this figure was quoted to illustrate the large gap between what Dixon claimed and the maximum of what could have been related to the accident.

The jury returned a verdict for Dixon, awarding $12,710 in past medical expenses and $4,000 in past non-economic loss. Blackwell moved for the entry of a final judgment and asked for attorney's fees pursuant to Civil Rule 68. Dixon opposed, claiming that the offer was indefinite and conditional, that she had beaten the offer, and that the offer was unreasonable because it was made before the exchange of initial disclosures. The superior court granted the motion and entered an order awarding Blackwell $79,459.87 in attorney's fees.

Dixon appeals, arguing: (1) that the jury's verdict was inadequate; (2) that the November 29, 2007 offer was procedurally defective, invalid, and unenforceable; and (3) that she beat the offer.

## III. STANDARD OF REVIEW

"An offer of judgment's compliance with Rule 68 is a question of law which we review independently."[1]  "Calculation of the value of a verdict to determine if it exceeded an offer of judgment presents questions of law, which we review de novo."[2]  "The adequacy of evidence supporting [a] jury's award is a mixed question of law and fact."[3]  In reviewing a jury's verdict, this court reviews the evidence in the light most favorable to the prevailing party and evaluates de novo the legal question of whether the evidence is sufficient to support the jury's award.[4]

## IV. DISCUSSION

### A.    The Jury's Verdict Was Adequate.

"The question of whether damages are inadequate . . . is in the first instance committed to the discretion of the trial judge and should be raised on a motion for a new trial."[5]  We reverse the denial of a motion for new trial on verdict inadequacy grounds only when there is no reasonable evidentiary basis for the jury's award.[6]  Where a

---

[1]    *Thomann v. Fouse*, 93 P.3d 1048, 1050 (Alaska 2004).

[2]    *Power Constructors, Inc. v. Taylor & Hintze*, 960 P.2d 20, 34 (Alaska 1998).

[3]    *Central Bering Sea Fishermen's Ass'n v. Anderson*, 54 P.3d 271, 277 (Alaska 2002).

[4]    *Id*.

[5]    *Heacock v. Town*, 419 P.2d 622, 623 (Alaska 1966) (citations omitted).

[6]    *Hutchins v. Schwartz*, 724 P.2d 1194, 1199 (Alaska 1986):

If there is an evidentiary basis for the jury's decision, then the denial of a motion for a new trial must be affirmed.  If the evidence is so slight and unconvincing as to make the verdict

(continued...)

challenge to the amount of damages has not been raised in the trial court, "we may refuse to review the issue or we may, in our discretion, review the award."[7]  If we choose to review, we examine whether "damages awarded appellant were so grossly inadequate as to amount to a miscarriage of justice."[8]  Dixon did not challenge the adequacy of the jury's verdict or move for a new trial in the superior court.

Dixon argues that Blackwell conceded in his closing argument that at least $17,955 in medical expenses were related to the accident.  She contends that this aspect of his closing argument was a binding judicial admission.  Because the jury only awarded $12,710 in medical expenses, Dixon argues that the verdict was necessarily inadequate and that a new trial is required.

In *Hayes v. Xerox Corporation*, we stated:  "A judicial admission, to be binding, must be one of fact and not a conclusion of law or an expression of opinion."[9]  It must be "clear, deliberate, and unequivocal."[10]  In *Xerox*, in the closing argument, Xerox's counsel stated: "I think he's been significantly injured.  I think he has injury now.  I think it may need treatment.  We don't know for sure."[11]  Xerox's counsel

---

[6](...continued)
>  unreasonable and unjust, then we must reverse the denial of
>  the motion for new trial.

[7]     *Murray v. Feight*, 741 P.2d 1148, 1160 (Alaska 1987) (citing *Heacock*, 724 P.2d at  624).

[8]     *Heacock*, 724 P.2d at 624.

[9]     718 P.2d 929, 931 (Alaska 1986).

[10]    *Id.* at 933.

[11]    *Id.* at 932.

conceded that lost wages were "reasonably certain to be incurred."[12]  Counsel then estimated how much he felt the jury could award on each claim, and came out to a total of $69,000 to $70,000.[13]  This court held that because Xerox's counsel couched his language as estimates and opinions and included the phrase "I think" before his statements, they were not clear, deliberate, and unequivocal statements of fact and were not judicial admissions.[14]

In this case, Blackwell's counsel's statement was, in context, not a "clear, deliberate, and unequivocal" statement that could be a judicial admission.[15]  In his closing, Blackwell's attorney argued that one of Dixon's doctors noted that any objective evidence of injury was gone six months after the accident.  He then added up all of the expenses that occurred within that six-month window, noting that some of them were probably not related to the accident.  Finally, Blackwell's attorney compared the total of those six months of expenses, $17,955, to the nearly $200,000 that Dixon was asking for.  Taken in context, Blackwell's closing was not a judicial admission that Dixon had incurred $17,955 of medical expenses related to the accident.

Because there was no judicial admission that Dixon's medical expenses caused by the accident exceeded the amount awarded, Dixon has not established that the award was so inadequate as to amount to a miscarriage of justice.

---

[12]   *Id.*

[13]   *Id.*

[14]   *Id.* at 932-33.

[15]   *See id.* at 933.

**B.** **The Offer Was Valid**

**1.** **The offer was not premature.**

Dixon argues that the November 29, 2007 offer was procedurally defective because it was served only two days after an answer to the complaint was filed and before either side had a chance for discovery. She interprets Rule 68's reference to an offer made "any time more than 10 days before the trial" as establishing only the last, and not the earliest, point at which an offer may be made. She argues that the language of Rule 68, with its reference to "costs then accrued" at the time of the offer, implies that the defendant will have accrued some costs by the time a valid offer can be made, which will not be the case at the time the answer is filed. Dixon also argues that an offer served shortly after the answer and before initial disclosures does not serve the intent of Rule 68, which is to encourage reasonable settlement practices. She claims that the purpose of the offer was merely strategic; it was designed to shift the burden of the litigation costs to Dixon.

Rule 68(a) states that an offer may be made "[a]t any time more than 10 days before the trial begins."[16] In *Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.*, we addressed the issue of whether there is a limit on how early a Rule 68 offer may be made.[17] Cook argued that a Rule 68 offer was made prematurely because it was made before Rule 26 disclosures had been exchanged.[18] We held that a party can make an offer "at any time" more than 10 days before the trial begins.[19]

In *Cook* we evaluated the following legislative history of Rule 68:

---

[16] Alaska R. Civ. P. 68(a).

[17] 116 P.3d 592, 597-99 (Alaska 2005).

[18] *Id.* at 598.

[19] *Id.*

[W]hat we're saying is that if this offer is made within a short period of time, from the ability that you would have after a case is filed to get discovery, so you kind of know where you're at, if a short period of time after that the offer is made, 60 days after that, and you don't accept it, and when you finally go to trial, the offer is within 5 percent of — less than what you would have settled for, you've got to pay all reasonable actual attorney's fees and costs, from the time the offer was made . . . .[20]

We held that while this history indicates that offers were allowable after Civil Rule 26 disclosures, it did not indicate that offers were *not* allowable *before* Civil Rule 26 disclosures.[21]

We have held that some Rule 68 offers are not valid, based on their timing and amount, because they do not serve the intent of Rule 68. In *Anderson v. Alyeska Pipeline Service Co.*, we held that a ten-dollar offer made at the outset of litigation was not valid under Rule 68 because it had no prospect of acceptance or of furthering settlement negotiations, but was simply an attempt to shift the costs of litigation.[22] In *Beal v. McGuire*, one-dollar offers were similarly held to be invalid and merely efforts to benefit from the enhanced fees provision of Rule 68.[23] In both cases we noted that the invalidated offers did not advance the legitimate purposes of Rule 68 and thus could not serve as a basis for an award of enhanced fees.[24]

---

[20] *Id*. at 599 (quoting H. Jud. Comm. notes, 20th Leg., 1st Sess (Feb. 21, 1997)).

[21] *Id*.

[22] 234 P.3d 1282, 1289-90 (Alaska 2010).

[23] 216 P.3d 1154, 1178 (Alaska 2009).

[24] *Anderson*, 234 P.3d at 1290; *Beal*, 216 P.3d at 1178 ("Even though a
(continued...)

The language of Rule 68 does not indicate any intent to disallow offers made before initial disclosures. We see no reason to overturn *Cook*. Further, Blackwell's offer was for $28,878.83, and the jury ultimately awarded only $16,710. Unlike in *Anderson* and *Beal*, it cannot be said that the offer, viewed objectively, had no prospect of acceptance or of furthering settlement negotiations or that it was merely a tactical effort to shift fees. Further, even though the offer was made only a few days after Blackwell filed his answer, State Farm, which was directing Blackwell's defense, and Dixon had been litigating the critical causation issue for some months in arbitration proceedings. In the arbitration, as previously noted, Dixon and two doctors had been deposed and much documentary information had been exchanged. Therefore the timing of the offer does not raise suspicions concerning the legitimacy of its purpose.

### 2. Blackwell's offer allowed for entry of judgment and was not contingent.

Dixon argues that because Blackwell's offer would have resulted in the dismissal of her case with prejudice, the offer was not a valid Rule 68 offer.

Rule 68 states that "the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer."[25] We have held that valid Rule 68 offers must allow for judgment to be entered.[26] In *Sayer v. Bashaw*, a physician had offered a money settlement that did not allow for judgment to be entered

---

[24](...continued)
purpose of Rule 68 is to encourage settlement and avoid protracted litigation, offers of judgment made without any chance or expectation of eliciting acceptance or negotiation do not accomplish the purposes behind the rule.").

[25]     Alaska R. Civ. P. 68(a).

[26]     *Sayer v. Bashaw*, 214 P.3d 363, 366 (Alaska 2009).

against him.[27]  Had judgment been entered, the physician would have faced higher malpractice insurance rates and feared damage to his reputation.[28]  We noted that California courts had interpreted a similar rule as not requiring entry of judgment, but we rejected this interpretation.[29]  Instead, we held that to be valid a Rule 68 offer must allow for judgment to be entered.[30]

We also held an offer invalid under Rule 68 in *ASRC Energy Services Power and Communications, LLC v. Golden Valley Electric Association, Inc.*[31]  In that case "[Golden Valley Electric Association] made an offer 'to allow entry of Judgment in favor of [ASRC] for Seven Hundred and Fifty Thousand Dollars ($750,000.00) . . . contingent on the [consolidated lawsuits] being dismissed with prejudice.' "[32]  We noted that "[i]n its brief [Golden Valley Electric Association] described its offer as an offer to pay [ASRC] in return for a dismissal of the litigation with prejudice."[33]  We also described the superior court's characterization of the offer as "an offer to pay, not an offer of judgment."[34]

The November 29, 2007 offer stated, in relevant part:  "Defendant Joshua Paul Blackwell, pursuant to Civil Rule 68, hereby offers to allow entry of judgment in

---

[27]    *Id*. at 364-66.

[28]    *Id*. at 365.

[29]    *Id*. at 365 n.13, 366.

[30]    *Id*. at 366.

[31]    267 P.3d 1151, 1168-69 (Alaska 2011).

[32]    *Id*. at 1168.

[33]    *Id*.

[34]    *Id*.

favor of Plaintiff Dixie D. Dixon in this action for a total sum of [$28,878.83] . . . . This offer of judgment will result in the dismissal of this action with prejudice." This offer explicitly called for the entry of judgment. Unlike the offer in *ASRC*, the offer was not contingent on the dismissal of the action with prejudice and was not construed by the trial court or the offeror as a mere offer to pay in return for dismissal of the suit with prejudice. We read the statement "[t]his offer of judgment will result in the dismissal of this action with prejudice" as an inartful statement of consequences rather than of a contingency. The language merely meant that entry of judgment would terminate all of Dixon's claims against Blackwell.

Because the offer allowed for entry of judgment and was not contingent, the language in the offer regarding dismissal with prejudice did not prevent it from being a valid Rule 68 offer.[35]

### 3. The offer did not require Dixon to assume improper obligations.

Dixon claims that the offer sought to impose burdens on her that were beyond the scope of the pleadings. She argues that the offer improperly required her to potentially face at least $75,000 in claims from her other insurers. She also argues that the offer would require her to waive over $70,000 in State Farm Medical Payments coverage.

The November 29, 2007 offer specified: "Defendant will assume responsibility for the State Farm Medical Payments lien arising from Ms. Dixon's post-

---

[35] While we find Dixon's argument unpersuasive on the merits, we additionally conclude that Dixon waived this issue by failing to raise it in the superior court. "We will not consider issues on appeal that were not raised [in the trial court] absent plain error, which exists 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " *David S. v. State, Dept. of Health & Soc. Servs.*, 270 P.3d 767, 774 (Alaska 2012) (quoting *D.J. v. P.C.*, 36 P.3d 663, 667-68 (Alaska 2001)).

accident treatment. Plaintiff will assume responsibility for any and all liens relating to the subject accident other than the aforementioned State Farm Medical Payments lien."

Dixon's non-State Farm medical insurers might have asserted that they were owed reimbursement out of the cash portion of Blackwell's offer. However, unless the insurers had specifically instructed Dixon not to seek to recover medical expenses that they had paid[36] or unless they were parties to the suit against Blackwell and instructed her not to settle, Dixon would not have been put in a position in which she would have had to reach into her own pocket and pay back medical expenses to her insurers. Dixon does not claim that either of these conditions was met.

It was not improper for the offer to emphasize that it would only satisfy the State Farm Medical Payments lien, and that Dixon would be responsible for other liens. If the offer had referred to *claims*, rather than *liens*, a different case would be presented. Arguably "claims" language would have made Dixon the indemnitor of Blackwell and State Farm as to any amounts asserted by her other medical insurers in excess of the amount of the offer of judgment. But stating that Dixon would be responsible for "liens" simply underscored what the law already provided. Dixon could be responsible for payment of her medical providers' liens out of the proceeds she received from the offer of judgment less prorated costs and fees.[37]

As to Dixon's argument that the offer if accepted would have resulted in a waiver on her part of her remaining $70,000 in medical payments coverage from State Farm, we see no impropriety. Immediately after bringing suit against Blackwell, Dixon withdrew her arbitration request for the remaining $70,000. This withdrawal either

---

[36]     *See Ruggles ex rel. Estate of Mayer v. Grow*, 984 P.2d 509, 512 (Alaska 1999).

[37]     *See id.*

waived her remaining medical payments claim in itself or it made the question of whether she was owed an additional amount on her medical payments coverage dependent on the outcome of the litigation. Either way, the acceptance of the offer would not have required Dixon to give up a benefit that was extraneous to the litigation.

### 4. The offer was not made in bad faith.

Dixon also argues that the offer was not made in good faith because "the offer implied that Dixon's lawsuit encompassed State Farm's subrogated claim." She argues that because State Farm had instructed Dixon not to pursue reimbursement for the $29,699.24 that State Farm had paid in her suit against Blackwell, and since State Farm's reimbursement claim as medical payments insurer for Dixon had already been presented to State Farm in its capacity as Blackwell's liability insurer, the implication in the offer that the lawsuit encompassed the subrogated claim was necessarily false. It follows, Dixon argues, that the offer was "deceptive on its face" and should for this reason be deemed invalid for the purpose of triggering enhanced fees.

Dixon correctly suggests that State Farm had the right to instruct Dixon not to pursue State Farm's Medical Payments claim against Blackwell, and that once such instructions were given Dixon lacked authority to pursue that claim.[38] But we fail to see

---

[38] As we stated in *Ruggles*:

When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim. The insurer effectively receives an assignment of its expenditure by operation of law and contract. If the insurer does not object, the insured may include the subrogated claim in its claim against a third-party tortfeasor. Any proceeds recovered must be paid to the insurer, less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim. But the subrogated claim belongs to the insurer. The insurer may pursue a direct

(continued...)

how the offer of judgment was in any sense deceptive when it stated that the defendant would assume responsibility for the State Farm Medical Payments lien. This statement simply clarified that the intent of the offer was that it would be a "new money offer" in the sense that there would be no offset for the State Farm Medical Payments lien.[39] As such, the questioned language of the offer was neither deceptive nor made in bad faith.[40]

Because the offer was not premature, called for the entry of judgment, imposed no improper obligations on Dixon, and was not made in bad faith, the offer was valid.[41]

---

[38](...continued)
> action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued . . . . When [the insurer] instructed [the insured] not to pursue its subrogation claim, [the insured] lacked authority to pursue it. [The defendant tortfeasor] was entitled to raise this lack of authority, for it represented a legitimate partial defense to [the insured's] claim.

*Id.*

[39]     We used the term "new money" in *Jackman v. Jewel Lake Villa*, 170 P.3d 173, 177 (Alaska 2007) to refer to an offer that would not be subject to an offset for payments already made for the benefit of the insured.

[40]     Further, Dixon's argument that the offer was deceptive because it implied that her claim encompassed State Farm's claim rings false for another reason. It appears that Dixon actually did present the medical bills that State Farm had paid to the jury as part of her claim for damages.

[41]     Dixon makes other claims related to the validity of the offer which we decide summarily. She argues that the offer was indefinite because the value of the State Farm Medical Payments lien was unclear. However, since Dixon had withdrawn the arbitration claim against State Farm, the lien would have remained at $29,966.24 if she had accepted the offer. Dixon also argues that the offer was not in complete satisfaction of her potential claims. She contends that the only way the offer could have been a
(continued...)

**C.      Dixon Did Not Beat The Offer.**

Dixon claims that the jury's verdict was actually more than the offer when the "liens" that she would have had to assume responsibility for, totaling at least $75,000, are taken into account. She also claims that accepting the offer would have amounted to waiving her remaining $70,000 State Farm Medical Payments coverage. Since the offer was for $28,878.83, she argues, the net amount of the offer was actually negative ($28,878.83 - $70,000 - $75,000). Because the jury gave her a positive amount, she argues that the verdict beat this negative offer.

Rule 68(b) states: "If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, . . . the offeree . . . shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney's fees incurred by the offeror . . . ."[42]

Dixon's method of accounting is logically untenable. Dixon did not have to assume responsibility for $75,000 in liens of other medical providers. As explained above, the liens of medical providers were liens only against her recovery less prorated costs and fees. Further, the value of her waiver of the remaining $70,000 in medical payments coverage was not $70,000. As the jury determined, she had no additional claim against that coverage. Thus there is no basis to subtract either of the claimed amounts from the amount of the offer of judgment.

---

[41](...continued)
complete satisfaction of her claims was if Blue Cross Blue Shield and Alaska Laborer's Trust had agreed to give up their option to sue Blackwell or his insurer. But the fact that the other insurers could have had claims against Blackwell that were not barred by Dixon's acceptance of the offer does not mean that the offer was not in complete satisfaction of *her* claims.

[42]        Alaska R. Civ. P. 68(b).

Because Dixon's recovery was at least five percent less favorable than Blackwell's offer, she did not beat the offer for Rule 68 purposes.

**V.    CONCLUSION**

Because the jury's verdict was not inadequate, the offer Blackwell made was a valid Rule 68 offer, and the judgment finally rendered by the court was at least five percent less favorable to Dixon than the offer, we AFFIRM the judgment of the superior court.

WINFREE, Justice, concurring.

I respectfully disagree with the court's conclusion that Joshua Blackwell's Rule 68 Offer of Judgment was an offer to allow entry of judgment rather than an offer to pay money in exchange for dismissal. But because the court alternatively concludes that Dixie Dixon waived this argument by failing to raise it to the superior court, and I agree with that conclusion, I concur in the ultimate decision by the court.

It is clear from the record that Dixon did not argue to the superior court that Blackwell's offer of judgment was an offer to pay rather than an offer to allow entry of judgment.[1] The "indefinite and conditional" argument Dixon raised to the superior court related to statements in the offer of judgment about resolution of potential liens on Dixon's recovery. The first time Dixon argued that Blackwell's offer of judgment was ambiguous regarding an entry of judgment or payment and dismissal was in her opening appellate brief. Dixon therefore did not preserve this issue for appeal,[2] and that should be enough to resolve this issue, as the court expressly states.[3]

But because the court nonetheless addresses the merits of the issue, I will set out the nature of my disagreement. An offer of judgment that includes language for

---

[1]    *See ASRC Energy Servs. & Power Commc'n, LLC v. Golden Valley Elec. Ass'n*, 267 P.3d 1151, 1168-69 (Alaska 2011) (holding invalid an offer of judgment that was ambiguous as to payment for dismissal or entry of judgment); *Sayer v. Bashaw*, 214 P.3d 363, 366 (Alaska 2009) (holding invalid Rule 68 offer to pay settlement amount in return for dismissal).

[2]    "We will not consider issues on appeal that were not raised [in the trial court] absent plain error, which exists 'where an obvious mistake has been made which creates a high likelihood that injustice has resulted.' " *David S. v. State, Dep't of Health & Soc. Servs.*, 270 P.3d 767, 774 (Alaska 2012) (quoting *D.J. v. P.C.*, 36 P.3d 663, 667-68 (Alaska 2001)).

[3]    Slip Op. note 35.

the entry of judgment in exchange for dismissal is, as noted in *ASRC Energy Services & Power Communications, LLC v. Golden Valley Electric Ass'n*, ambiguous at best and an offer to pay at worst, and therefore unenforceable.[4]  In my view we should draw a bright-line rule on this point.  Moreover, contrary to the court's discussion today, Blackwell's superior court briefing and the superior court's order both support the conclusion that Blackwell's offer actually was an offer to pay, not an offer to allow entry of judgment.  When arguing whether the offer of judgment language about liens was vague, indefinite, or conditional, Blackwell stated:

> [Blackwell] offered to pay Ms. Dixon $28,878.83, plus Rule 79 costs, prejudgment interest, Rule 82 attorney fees, and to assume responsibility for the State Farm Medical Payments lien, the amount of which has been disclosed and discussed at length in the medical payments arbitration process over the prior year.  That was the offer, plain and simple.

The superior court's order awarding Rule 68 attorney's fees stated:

> Mindful of the case law cited by the parties, the court finds the offer of judgment sufficiently clear and enforceable without conditions.  State Farm was going to pay to Ms. Dixon, on behalf of . . . Mr. Blackwell, the sum of $28,878.83, plus ARCP 82 attorneys fees, plus interest, plus allowable costs, and State Farm would additionally eat its own med pay lien . . . .

It is apparent that both Blackwell and the superior court considered Blackwell's Rule 68 offer to be an offer to pay in return for a dismissal, not an offer to allow entry of judgment.  But because this specific issue was not raised to the superior court and our *ASRC Energy Services* decision had not yet been issued, I cannot conclude

---

[4]     *ASRC Energy Servs.*, 267 P.3d at 1168-69.

that it was plain error for the superior court to enforce the offer as an offer to allow entry of judgment.[5]

---

[5]    *See* note 2, *supra*.