ASRC ENERGY SERVICES POWER AND COMMUNICATIONS, LLC (f/k/a Global Power & Communications, LLC) and Global Power/City Electric Joint Venture, LLC, Appellants,

v.

GOLDEN VALLEY ELECTRIC ASSOCIATION, INC., Appellee.`

Golden Valley Electric Association, Inc., Appellant,

v.

ASRC Energy Services Power and Communications, LLC (f/k/a Global Power & Communications, LLC) and Global Power/City Electric Joint Venture, LLC, Appellees.

Nos. S–12630, S–12989.

Supreme Court of Alaska.

Nov. 4, 2011.

Rehearing Denied Feb. 10, 2012.

Charles E. Cole, Law Offices of Charles E. Cole, Fairbanks, for Appellants/Appellees ASRC Energy Services Power and Communications, LLC (f/k/a Global Power & Communications, LLC) and Global Power/City Electric Joint Venture, LLC.

Cory R. Borgeson and Nikole V. Schick, Borgeson & Burns, PC, Fairbanks, and Joseph W. Evans, Bremerton, Washington, for Appellant/Appellee Golden Valley Electric Association, Inc.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, WINFREE, and CHRISTEN, Justices.

*OPINION*

PER CURIAM.

## I. INTRODUCTION

When the legislature enacted the Alaska Unfair Trade Practices and Consumer Protection Act (UTPA)[1] in 1970, it declared unlawful "unfair or deceptive acts or prac-

---

1. AS 45.50.471–.561.

2. AS 45.50.471(a).

3. AS 45.50.545.

4. *See* 1974 House Journal 122–24; ch. 53, § 8, SLA 1974.

5. 609 P.2d 520, 532 (Alaska 1980).

6. *Id.* at 534–35.

7. *See Kenai Chrysler Ctr., Inc. v. Denison,* 167 P.3d 1240, 1255–57 (Alaska 2007); *Odom v. Fair-*

tices in the conduct of trade or commerce."[2] Through a 1974 amendment to the UTPA, the legislature directed Alaska courts to give "due consideration and great weight" to Federal Trade Commission (FTC) and federal court interpretations of 15 U.S.C. § 45(a)(1), a subsection of the Federal Trade Commission Act (FTC Act).[3] The 1974 legislature specifically directed Alaska courts to adhere to these interpretations to provide uniformity in unfair trade laws.[4] In a seminal 1980 decision, *State v. O'Neill Investigations, Inc.,* we rejected a void-for-vagueness challenge to the prohibition against "unfair or deceptive acts or practices in the conduct of trade or commerce," reasoning that the language of the Alaska UTPA had a "fixed meaning" derived from "agency and judicial interpretation of the identical words of the federal statute."[5] We then adopted the contemporaneous agency and federal court standards for "unfair or deceptive acts or practices."[6]

For over 30 years, we have consistently defined "unfair or deceptive acts or practices" in line with *O'Neill Investigations.*[7] During that time, however, the FTC and some federal courts have modified their definitions of unfairness and deception. The FTC adopted a modified definition of unfair practices in 1980,[8] which was codified by Congress in a separate subsection of the FTC Act in 1994.[9] And an FTC adjudication in 1984, *In re Cliffdale Associates, Inc.,* provided a modified definition of deception.[10]

The primary issue in this case is whether the Alaska legislature's directive that courts should give "due consideration and great weight" to the FTC and federal court interpretations of 15 U.S.C. § 45(a)(1) requires us to overrule our previous line of cases. We

---

*banks Mem'l Hosp.,* 999 P.2d 123, 131–32 (Alaska 2000); *State v. Grogan,* 628 P.2d 570, 571–72 (Alaska 1981).

8. Letter from FTC to Senators Ford and Danforth (Dec. 17, 1980), *reprinted in* H.R.Rep. No. 98–156, pt. 1, at 33–40, 36 (1983).

9. *See* 15 U.S.C. § 45(n).

10. 103 F.T.C. 110, 1984 WL 565319 (1984).

hold that it does not, and that the trial court did not err in evaluating UTPA claims and formulating a jury instruction according to our precedent and previously articulated standards for deception and unfairness. But for other reasons explained below, we vacate in part the judgment in this case and remand for further proceedings.

## II. FACTS AND PROCEEDINGS

### A. Facts

This litigation arises from the award by Golden Valley Electric Association (GVEA) of two competitively bid construction contracts on its Northern Intertie Project. In November 2001 GVEA awarded Global Power & Communications, LLC (Global)[11] an approximately $39.4 million contract (Contract NI–8) for construction of the Northern Intertie's Tanana River flats section. Later GVEA awarded Global an approximately $5.3 million contract (Contract NI–9) for construction of the Northern Intertie's Tanana River crossing and Fairbanks sections.

Subsequently, after Global had been awarded NI–9 and before it had completed work on NI–8, Global presented GVEA with requests for additional compensation (RFIs) totaling approximately $2.4 million in connection with NI–8. GVEA responded that it found "no legitimate basis in the construction documents" to justify Global's RFIs and was "rejecting Global's request for additional payment."

Several months later, Global requested a meeting with GVEA to discuss the merits of the rejected RFIs. Global also notified GVEA that Global would submit more RFIs, arising out of both NI–8 and NI–9. Global submitted additional RFIs to GVEA that month, including additional claims of approximately $2.3 million in connection with NI–8 and claims of approximately $765,000[12] in connection with NI–9. Through these RFIs, Global sought additional compensation totaling approximately $5.7 million under the two contracts.

Global primarily alleged that it had incurred lost profits and expenses due to GVEA's inability to timely provide permits, materials, and instructions as required by the contracts. Global also alleged that GVEA requested extra work for which Global was entitled to compensation.

GVEA responded to Global denying most of the RFIs but indicated that it would approve a few and consider partial payment for a few others.

### B. Proceedings

#### 1. Pre-trial proceedings

Global filed two complaints against GVEA in October 2003, asserting in the first that GVEA owed Global "in excess of $50,000" in connection with NI–8 and in the second that GVEA owed Global "in excess of $50,000" in connection with NI–9. GVEA answered each complaint and the two actions were consolidated.

In December 2004 GVEA conveyed what it considered an Alaska Civil Rule 68 offer of judgment to Global, "offer[ing] to allow entry of Judgment in favor of [Global] for Seven Hundred and Fifty Thousand Dollars ($750,-000.00) ... contingent on the [consolidated lawsuits] being dismissed with prejudice." Global did not accept this offer.

Global then filed an amended complaint alleging new causes of action regarding NI–8, including misrepresentation, failure to disclose, and a claim under the UTPA.[13] Specifically, Global alleged that GVEA had concealed and misrepresented the existence of technical data about subsurface conditions along the project route.

GVEA moved for judgment on the pleadings on Global's UTPA claim. GVEA argued that the UTPA did not apply to the contractual relationship between GVEA and Global despite its application to a commercial dispute in *Western Star Trucks, Inc. v. Big Iron*

---

**11.** Global has since changed its name to ASRC Energy Services Power and Communications, LLC, and the case caption has been changed to reflect that fact. To be consistent with references to the parties in the trial court record, we continue to refer to ASRC as Global.

**12.** Although the parties assert a larger figure in their briefs, it does not appear to be supported by the record.

**13.** AS 45.50.471–.561.

*Equipment Service, Inc.*[14] GVEA argued that the construction contracts "were complex, private, arm's-length business transactions between two sophisticated business entities" and that the "contracts did not implicate consumer protection concerns." Global countered that *Western Star* required the denial of GVEA's motion for judgment on the pleadings. The trial court agreed with Global and denied GVEA's motion after oral argument.

In early 2006 Global reformulated its claims using a different calculation methodology, reducing the total amount of its claims from approximately $5.7 million to approximately $3.2 million. It apparently did so after consulting a damages expert who found the original methodology "probably not as accurate as it should be."

GVEA amended its answer to Global's amended complaint, asserting new counterclaims against Global for misrepresentation and alleging that Global had falsified documents, including reports, employee time sheets, and RFIs.

GVEA later amended its counterclaims, asserting that Global had violated the UTPA by presenting falsified RFIs. GVEA alleged that it suffered damages from relying on false or misleading statements in Global's RFIs.

The parties filed trial briefs in April 2006. Global argued that GVEA could not prove damages for its UTPA claim because it had rejected and not paid Global's RFIs, excepting the few GVEA admitted it owed. GVEA maintained that the UTPA did not apply to the two contracts, but argued alternatively that under the trial court's earlier ruling it was entitled to pursue its UTPA claim against Global because GVEA had incurred expenses investigating and defending against Global's claims in the RFIs.

On the day of the final pretrial conference, Global filed a trial brief supplement regarding standards for UTPA claims. Global argued that the UTPA requires courts to give "due consideration and great weight" to interpretations of similar provisions of the Federal Trade Commission Act, and that both the FTC and federal circuit courts of appeals had modified the standards for an unfair or deceptive trade practice since our seminal holding in *State v. O'Neill Investigations*.[15] Global indicated it would submit revised proposed jury instructions in accordance with current federal standards.

**2. Trial proceedings**

A few days into trial GVEA responded to Global's trial brief supplement. GVEA argued that *Odom v. Fairbanks Memorial Hospital*[16] provided the standards for an unfair or deceptive trade practice under the UTPA.

This issue continued to arise during trial. Shortly before the close of Global's case, and after the court and counsel discussed relevant mid-trial jury instructions for the UTPA claims, the court stated that it would hold the issue of the standards for an unfair or deceptive trade practice open for final jury instructions.

At the conclusion of GVEA's case, Global moved for a directed verdict on GVEA's UTPA claim, arguing that it cannot be an unfair trade practice to withdraw a previously submitted claim in the course of litigation. The trial court denied the motion. After its rebuttal case, Global again moved for a directed verdict on GVEA's UTPA claim based on the current definitions of unfairness and deception. The trial court again denied the motion.

The trial court's final instruction on the parties' UTPA claims, Jury Instruction 28, contained the existing Alaska standards for an unfair or deceptive trade practice, as requested by GVEA, and not the standards based on current FTC Act interpretations, as

---

**14.** 101 P.3d 1047, 1053–54 (Alaska 2004) (concluding that the UTPA protects both consumers and businesses).

**15.** 609 P.2d 520, 532–34 (Alaska 1980) (establishing unfair or deceptive trade practices standards).

**16.** 999 P.2d 123, 132 (Alaska 2000) (citing and relying on *O'Neill Investigations*, 609 P.2d at 534–35, for unfair or deceptive trade practices standards).

requested by Global. The jury returned three special verdicts.

With respect to Global's claims under NI–8, the jury found GVEA had neither breached any contractual or common law obligations to Global nor engaged in any unfair trade practices.

With respect to Global's claims under NI–9, the jury found GVEA had breached its contractual obligations to Global but had not breached its implied promise of good faith and fair dealing or its duty to cooperate. The jury also found GVEA's actions were not the legal cause of any damages to Global.

With respect to GVEA's counterclaims under both NI–8 and NI–9, the jury found Global had: (1) breached its contractual obligations to GVEA; (2) breached the implied promise of good faith and fair dealing; (3) engaged in misrepresentations; and (4) engaged in unfair trade practices. The jury then found Global was the legal cause of damages to GVEA, found GVEA had proved its damages with reasonable certainty and particularity, and awarded GVEA damages of $98,386. The jury attributed the entire $98,386 award to Global's unfair trade practices. The special verdict form did not allow the jury to state whether Global's misrepresentations and breach of contract might have concurrently caused those damages.

The trial court ordered that GVEA's damages "be trebled in the final judgment according to AS 45.50.531(a)," [17] declared GVEA the prevailing party for purposes of awarding costs and attorney's fees, and entered final judgment.

### 3. Post-judgment proceedings

#### a. Global's motions

Global moved for judgment notwithstanding the verdict or, alternatively, for a new

trial on GVEA's UTPA claim. Global first argued that the trial court erred in not granting a directed verdict on the UTPA claim at the close of GVEA's case because no reasonable juror could have concluded: (1) that Global's withdrawal of claims during the litigation was an unfair trade practice; (2) that Global's withdrawal of claims during the litigation was an act "in the conduct of trade or commerce"; or (3) that GVEA suffered damages from Global's withdrawal of claims during the litigation. Global next reiterated its arguments about Jury Instruction 28, contending that the court failed to give "due consideration and great weight" to current interpretations of "unfairness" and "deception" promulgated by the FTC and federal courts, and that the court erred by using the *Odom* standards. The trial court ruled that Jury Instruction 28 conformed to Alaska law and that substantial evidence supported the jury's verdict that Global had engaged in unfair trade practices; it therefore denied Global's motions for judgment notwithstanding the verdict and for a new trial on GVEA's UTPA claim.

Global also moved for a new trial on damages for GVEA's breach of NI–9. Global argued that after finding GVEA had breached NI–9, no reasonable juror could have concluded GVEA was not the legal cause of at least some damages. The trial court ruled that "[s]ubstantial evidence supports the jury's conclusion that GVEA's breach of contract was not the legal cause of any damages to Global" and denied the motion for a new trial on damages.

#### b. GVEA's motion

GVEA moved for an award of full reasonable attorney's fees totaling over $1 million for the entire litigation, citing the UTPA.[18] GVEA later moved for additional attorney's

---

**17.** AS 45.50.531(a) provides:

A person who suffers an ascertainable loss of money or property as a result of another person's act or practice declared unlawful by AS 45.50.471 may bring a civil action to recover for each unlawful act or practice three times the actual damages or $500, whichever is greater. The court may provide other relief it considers necessary and proper. Nothing in this subsection prevents a person who brings

an action under this subsection from pursuing other remedies available under other law, including common law.

**18.** AS 45.50.537(a) provides:

In an action brought by a private person under AS 45.50.471–45.50.561, a prevailing plaintiff shall be awarded costs as provided by court rule and full reasonable attorney fees at the prevailing reasonable rate.

fees incurred in responding to Global's post-trial motions.

The trial court ordered GVEA to amend its attorney's fees motion to segregate time devoted to the prosecution of its UTPA claim because GVEA was entitled to full attorney's fees for that claim but not for prosecuting its other counterclaims or defending against Global's claims. The court noted that segregation of attorney's fees by claim is not always required when the "claims are ... interrelated or ... have a common core of facts," but further observed that GVEA had prosecuted its UTPA claim for less than three months. The court believed segregation, or at least estimation, of UTPA–related attorney's fees should be feasible. The court ordered the parties to address how the UTPA full attorney's fees provision might act in concert with Rules 68 or 82 when calculating the final fee award.

GVEA amended its motion for an award of attorney's fees to approximately $660,000. GVEA calculated its actual attorney's fees after it filed the UTPA claim (approximately $515,000) and divided that amount equally among its four separate counterclaims, requesting that 25% (approximately $129,000) be attributed to the prosecution of the UTPA claim. Then, invoking Rule 68, GVEA requested 50% of its remaining actual attorney's fees (approximately $530,500).

Global argued that GVEA's December 2004 offer was not a valid Rule 68 offer of judgment because it called for a dismissal of the action rather than an entry of judgment against GVEA. Global also argued that GVEA's allocation of attorney's fees for its UTPA claim failed to comply with the court's order and was arbitrary.

The trial court found GVEA's allocation "fair and reasonable," noting that a reasonable person might believe GVEA spent more than 25% of its time on the UTPA counterclaim because of the high stakes involved. The court awarded GVEA approximately $128,000 under the UTPA and approximately $471,000 under Rule 68, for a total of approximately $599,000.

#### 4. Issues on appeal

Global appeals, arguing: (1) that its conduct was insufficient to support liability under the UTPA, and its motions for a directed verdict and for judgment notwithstanding the verdict should have been granted; (2) that it was reversible error to give Jury Instruction 28; (3) that the trial court should have granted Global a new trial upon the jury's finding that GVEA breached NI–9 but was not the legal cause of damages; (4) that GVEA's December 2004 offer did not comply with Rule 68 and cannot be used to enhance GVEA's attorney's fees award; (5) that GVEA's attorney's fees for prosecution of its UTPA counterclaim were not properly segregated; and (6) that the trial court erred by awarding post-judgment attorney's fees.

GVEA cross-appeals, arguing that it is entitled to an award of its full reasonable attorney's fees from the date of its UTPA claim.

### III. DISCUSSION

#### A. The Superior Court Did Not Err By Relying On Our Precedent And Standards For "Unfair Or Deceptive" Practices Under The UTPA.

##### 1. Standard of review

Issues of statutory interpretation and application present questions of law to which we apply our independent judgment.[19] We have explained that this standard requires us to "look to the meaning of the language, the legislative history, and the purpose of the statute and adopt the rule of law that is most persuasive in light of precedent, reason, and policy."[20] "We will overturn one of our prior decisions only when we are 'clearly convinced that the rule was originally erroneous or is no longer sound because of changed conditions, and that more good than harm would result from a departure from precedent.'"[21]

---

**19.** *Mat–Su Valley Med. Ctr., LLC v. Advanced Pain Ctrs. of Alaska, Inc.,* 218 P.3d 698, 700 (Alaska 2009) (citing *State v. Jeffery,* 170 P.3d 226, 229 (Alaska 2007)).

**20.** *Id.* at 700–01 (quoting *Enders v. Parker,* 66 P.3d 11, 13–14 (Alaska 2003)).

**21.** *State v. Carlin,* 249 P.3d 752, 756 (Alaska 2011) (citing and quoting *Pratt & Whitney Cana-*

### 2. Overview and development of relevant law

Global's appeal from the adverse judgment on GVEA's UTPA claim raises three discrete but interrelated questions of law. The first, a threshold issue, is whether AS 45.50.545 requires that we modify our standards for unfair or deceptive trade practices set out in *O'Neill Investigations*, and the cases following it, in light of subsequent changes in FTC and federal court definitions of unfairness and deception.

Our starting point is the Alaska legislature's 1970 enactment of the UTPA.[22] Alaska Statute 45.50.471(a) declares unlawful "unfair or deceptive acts or practices in the conduct of trade or commerce." Alaska Statute 45.50.471(b) sets out specific actions included within the meaning of "unfair or deceptive acts or practices." Alaska Statute 45.50.471(c) provides that the specific actions set out in .471(b) "are in addition to and do not limit the types of unlawful acts and practices actionable at common law or under other state statutes."

Of great import to this case is AS 45.50.545, which mandates that "[i]n interpreting AS 45.50.471 due consideration and great weight should be given the interpretations of 15 U.S.C. § 45(a)(1) (§ 5(a)(1) of the Federal Trade Commission Act)."[23] The legislature added this provision to the UTPA in 1974 at the request of Governor Egan, whose transmittal letter stated that his proposed amendment would:

> [C]onform [the UTPA] to the language of the Federal Trade Commission Act ... enable the Attorney General and the courts of the state to utilize the body of law created by the Federal Trade Commis-

sion .... [and provide] the consumer and the businessman ... with uniformity in unfair trade laws.[24]

We first considered the relationship between AS 45.50.471(a) and 15 U.S.C. § 45(a)(1) in *O'Neill Investigations*. In that case the State filed a complaint against a debt collector.[25] The trial court granted the debt collector's motion to dismiss because "without interpretative regulations, [the UTPA] was unconstitutionally vague."[26] On appeal, we held that the UTPA was not impermissibly vague,[27] specifically noting:

> Since the [UTPA] directs that this section be interpreted by giving "great weight" and "due consideration" to the [FTC] and federal court interpretations of the analogous federal statute, the words have a fixed meaning which has survived challenges for vagueness. It is axiomatic that words will be infused with the meaning of prior judicial construction. The relevant prior judicial construction here is that which has emerged from agency and judicial interpretation of the identical words of the federal statute.[28]

We therefore determined that "[a]ny defects in the constitutional sufficiency of the warning provided by the [UTPA are] thus cured by authoritative administrative interpretations which clarify obscurities or resolve ambiguities."[29]

We next established standards for unfair or deceptive acts under the UTPA. "Two elements must be proved to establish a prima facie case of unfair or deceptive acts or practices under the [UTPA]: (1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce,

---

*da, Inc. v. Sheehan*, 852 P.2d 1173, 1175–76 (Alaska 1993)).

**22.** Ch. 246, § 2, SLA 1970.

**23.** When AS 45.50.545 was passed in 1974, 15 U.S.C. § 45(a)(1) provided, in relevant part: "[U]nfair or deceptive acts or practices in commerce[ ] are declared unlawful." Today, and at the commencement of this litigation, 15 U.S.C. § 45(a)(1) provides: "[U]nfair or deceptive acts or practices in or affecting commerce[ ] are hereby declared unlawful."

**24.** 1974 House Journal 122; *see also* ch. 53, § 8, SLA 1974.

**25.** *State v. O'Neill Investigations*, 609 P.2d 520, 524 (Alaska 1980).

**26.** *Id.* at 525.

**27.** *Id.* at 532–34.

**28.** *Id.* at 532 (footnotes omitted).

**29.** *Id.* at 534 (citing *Parker v. Levy*, 417 U.S. 733, 752–56, 94 S.Ct. 2547, 41 L.Ed.2d 439 (1974)).

an unfair act or practice has occurred." [30] Relying on contemporaneous FTC and federal court interpretations of the identical language of the FTC Act, we explained that "[a]n act or practice is deceptive or unfair if it has the capacity or tendency to deceive" [31] and that neither actual injury [32] nor intent to deceive is required.[33] Relying on these same sources, we defined unfairness by reference to the United States Supreme Court case of *FTC v. Sperry & Hutchinson Co.* (hereinafter the *Sperry* standard), which considered:

> (1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers (or competitors or other businessmen).[34]

Thus we expressly based our standards for unfairness and deception on federal agency and judicial authorities interpreting 15 U.S.C. § 45(a)(1).[35]

A survey of our subsequent UTPA cases confirms that we have consistently, for the past 30 years, used the *O'Neill Investigations* standards for unfairness and deception.[36] But, as Global points out, the FTC, and subsequently many federal courts, have used modified standards for unfairness and deception since we decided *O'Neill Investigations* in 1980.

First, the FTC issued a policy statement in 1980, noting that "the Commission has continued to refine the standard of unfairness in its cases and rules, and it has now reached a more detailed sense of both the definition and the limits of these criteria." [37] The policy statement went on to provide the refined standards for unfairness: "To justify a finding of unfairness the injury must satisfy three tests. It must be substantial; it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and it must be an injury that consumers themselves could not reasonably have avoided." [38]

In 1994 Congress codified this language in a new provision to the FTC Act, which states:

> The [FTC] shall have no authority ... to declare unlawful an act or practice on the grounds that such act or practice is unfair unless the act or practice causes or is likely to cause substantial injury to consumers which is not reasonably avoidable by consumers themselves and not outweighed by countervailing benefits to consumers or to competition.[39]

Following codification of this new subsection, federal courts have followed this new statuto-

---

**30.** *Id.* at 534.

**31.** *Id.* (citing *FTC v. Raladam Co.*, 316 U.S. 149, 152, 62 S.Ct. 966, 86 L.Ed. 1336 (1942)).

**32.** *Id.* at 534–35 (citing *Floersheim v. FTC*, 411 F.2d 874, 878 (9th Cir.1969)).

**33.** *Id.* at 535 (citing *Warner Lambert Co. v. FTC*, 562 F.2d 749, 763 (D.C.Cir.1977) and *Montgomery Ward & Co. v. FTC*, 379 F.2d 666, 672 (7th Cir.1967)).

**34.** *Id.* at 535 (quoting *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244 n. 5, 92 S.Ct. 898, 31 L.Ed.2d 170 (1972)).

**35.** *See id.* at 534–35; *Sperry & Hutchinson*, 405 U.S. at 244 n. 5, 92 S.Ct. 898.

**36.** *See Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255–57 (Alaska 2007) (relying on

*O'Neill Investigations* in discussing standards for an unfair practice and concluding evidence was sufficient to uphold UTPA claim); *Odom v. Fairbanks Mem'l Hosp.*, 999 P.2d 123, 131–32 (Alaska 2000) (quoting standards articulated in *O'Neill Investigations* and holding superior court erred in dismissing UTPA claim); *State v. Grogan*, 628 P.2d 570, 571–72 (Alaska 1981) (reiterating standards stated in *O'Neill Investigations* and holding that vandalizing customer's property is an unfair trade act).

**37.** Letter from FTC to Senators Ford and Danforth (Dec. 17, 1980), *reprinted in* H.R.Rep. No. 98–156, pt. 1, at 33–40, 36 (1983) (footnote omitted).

**38.** *Id.*

**39.** FTCA Amendments of 1994, Pub.L. No. 103–312, § 9, 108 stat. 1691, 1695 (codified at 15 U.S.C. § 45(n)).

rily imposed limitation on what constitutes an unfair act or practice under the FTC Act.[40]

Regarding the standard for deceptive practices, we held in *O'Neill Investigations* that "[a]n act or practice is deceptive or unfair if it has the capacity or tendency to deceive" where neither actual injury as a result of the deception nor intent to deceive were required.[41] Post-*O'Neill Investigations*, in the 1984 *Cliffdale* decision, the FTC announced a modified standard for a deceptive act or practice: "[F]irst, there is a representation, omission, or practice that, second, is likely to mislead consumers acting reasonably under the circumstances, and third, the representation, omission, or practice is material." [42]

We must now determine whether these new federal standards require us to overrule our precedent.

### 3. Applicable standards for a deceptive or unfair trade practice in this case

Global argues that the trial court erred by denying its motions for a directed verdict and for a judgment notwithstanding the verdict and by giving Jury Instruction 28.[43] Global contends the court erred by not giving due consideration and great weight to current

FTC interpretations of the FTC Act as required by AS 45.50.545 and our precedent—particularly *O'Neill Investigations* and *Western Star*. GVEA urges us to reject Global's argument for three reasons: (1) Global waived this issue by failing to object to the jury instruction; (2) the instruction conformed to existing Alaska law; and (3) any error in giving the instruction was harmless. GVEA offers no direct response to Global's argument that the trial court erred in denying its motions for directed verdict and for a judgment notwithstanding the verdict.

#### a. Waiver regarding jury instruction

■■■ Alaska Civil Rule 51(a) provides that "[n]o party may assign as error the giving or the failure to give an instruction unless the party objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which the party objects and the grounds of the objection." [44] We have previously concluded that Rule 51(a) requires only that a party "ma[k]e the superior court aware of the alleged error." [45] But the reason for appealing an instruction cannot be "entirely different" from the objection raised before the trial court.[46]

In its trial brief supplement, Global argued that the court should use current FTC Act

---

**40.** *See, e.g., FTC v. Neovi, Inc.*, 604 F.3d 1150, 1153 (9th Cir.2010) (citing § 45(n) and defining "the [k]ey issue on appeal" as "whether [defendant] is liable for causing substantial injury to consumers that is not reasonably avoidable or outweighed by countervailing benefits"); *FTC v. Accusearch Inc.*, 570 F.3d 1187, 1193–94 (10th Cir.2009) (looking to § 45(n) as "setting out elements of an unfair practice").

**41.** *O'Neill Investigations*, 609 P.2d at 534–35 (citing *FTC v. Raladam Co.*, 316 U.S. 149, 152, 62 S.Ct. 966, 86 L.Ed. 1336 (1942)); *see also Kenai Chrysler*, 167 P.3d at 1255 (same).

**42.** *In re Cliffdale Assocs., Inc.*, 103 F.T.C. 110, 1984 WL 565319 (1984).

**43.** The trial court's instruction on the parties' UTPA claims, Jury Instruction 28, read as follows:

In order to prevail, a claimant must prove it is more likely true than not true that:

1. The party engaged in an unfair or deceptive act or practice;
2. The act or practice must have occurred in the conduct of trade or commerce; *and*

3. The other party suffered ascertainable loss of money or property as a result.

An act or practice is deceptive if it can be interpreted in a misleading way. The claimant is not required to prove that the other party intended to deceive anyone.

An act or practice is unfair if it 1) offends public policy; 2) is immoral, unethical, oppressive, or unscrupulous; *or* 3) causes substantial injury in the form of monetary harm or unwarranted health and safety risks.

(Emphasis in original.)

**44.** Alaska R. Civ. P. 51(a).

**45.** *Loof v. Sanders*, 686 P.2d 1205, 1209 n. 7 (Alaska 1984) (citing *Alaska Int'l Indus. v. Musarra*, 602 P.2d 1240, 1243 & nn. 1–2 (Alaska 1979)); *see also Jaso v. McCarthy*, 923 P.2d 795, 800 (Alaska 1996) ("The dictates of [Rule 51(a)] are satisfied only if the judge is clearly made aware of the alleged error in ... the instructions.").

**46.** *Van Huff v. Sohio Alaska Petroleum Co.*, 835 P.2d 1181, 1187 (Alaska 1992) (declining to consider objection because it differed from that stated at trial).

standards for deciding UTPA claims. Global objected to the mid-trial UTPA instruction, specifically referencing the current FTC Act standards and noting the court's obligation to give due consideration and great weight to FTC and federal court interpretations of the FTC Act. Global renewed its position when arguing for a directed verdict. This conduct is sufficient to satisfy Rule 51(a), even if Global did not again formally object just before final instructions were given to the jury. We therefore reject GVEA's waiver argument and turn to the merits of Golden's argument that the superior court should have adopted current FTC Act standards for the UTPA claims.

### b. Global's motions and Jury Instruction 28

■ The trial court conformed to our precedent and standards for unfair or deceptive trade practices in evaluating Global's motions for directed verdict and judgment notwithstanding the verdict and in formulating Jury Instruction 28. We decline to abandon our prior case law: We do not adopt the FTC's 1980 policy statement, now codified at 15 U.S.C. § 45(n), as the standard for evaluating whether a practice may be deemed unfair under the Alaska UTPA. We also decline to depart from our precedent regarding the definition of a deceptive practice. We thus conclude that the trial court did not err in evaluating Global's motions or formulating Jury Instruction 28 according to our prior definitions of deceptive or unfair trade practices.

We expressly stated in *O'Neill Investigations* that the UTPA was not unconstitutionally vague because under AS 45.50.545, an interpretive amendment added in 1974, the rather amorphous concepts could take meaning from FTC and federal court interpretations of identical language found in the FTC Act, namely 15 U.S.C. § 45(a)(1).[47] We then set out the definitions for deception and unfairness gleaned from contemporaneous FTC and federal court authorities, and we have been consistently applying those standards for 30 years. We conclude that, in adopting AS 45.50.545, the 1974 legislature did not intend that Alaska courts would be required to abandon Alaska precedent where later changes in the federal approach conflicted with Alaska law. We now turn to our separate analysis of what constitutes "unfairness" and what constitutes "deceptive practice."

Regarding unfairness, because the federal statute changed markedly after the addition of 15 U.S.C. § 45(n) in 1994, FTC and federal court interpretations of the FTC Act post–1994 are not authorities that the 1974 legislature identified as proper guidance for resolving the scope and meaning of unfairness under Alaska's UTPA. Moreover, 15 U.S.C. § 45(n) appears to restrict the scope of unfair or deceptive conduct that is actionable under the FTC Act, and incorporating these restrictions into the Alaska UTPA would result in less protection for Alaska consumers and business people.[48] In contrast, we have applied Alaska's UTPA broadly.[49] We recently stated that a "variety of factors can be considered in determining the existence of an unfair practice"[50] and indicated our approval of other jurisdictions' "focus on the unfairness of the disputed practice under the specific circumstances presented" and their "flexible, case-specific approaches."[51] Therefore, to provide broad protection to

47. *O'Neill Investigations*, 609 P.2d at 532–34; *see also* AS 45.50.545; *Western Star Trucks, Inc. v. Big Iron Equip. Serv., Inc.*, 101 P.3d 1047, 1053 (Alaska 2004) (characterizing AS 45.50.545 as requiring reference to FTC Act interpretations).

48. *See* 15 U.S.C. § 45(n) (directing that the FTC "shall have no authority ... to declare unlawful" acts and practices that do not meet the certain parameters); *see also FTC v. IFC Credit Corp.*, 543 F.Supp.2d 925, 934–35, 937 (N.D.Ill.2008) (describing subsection (n) as "a precondition to the FTC's authority" and noting that "[f]or the first 80 years of its existence, the [FTC Act] contained no comparable provision").

49. *See* Minutes, Sen. Judiciary Comm. Hearing on C.S.H.B. 543, 8th Leg., 2d Sess. (April 16, 1974) (Comments of Norman Gorsuch, Attorney Gen.) (explaining that C.S.H.B. 543 would "*broaden* [ ] the definition of unfair trade practices to include 'little FTC' language") (emphasis added).

50. *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1255–56 (Alaska 2007).

51. *Id.* at 1256.

consumers and business people in Alaska and to achieve the uniformity that was the goal of the 1974 legislature, we will adhere to our precedent standards for unfairness and deception until such time that the legislature sees fit to incorporate the limitations of 15 U.S.C. § 45(n) into Alaska's UTPA.

Our approach is informed by decisions of other states that have faced this issue. Initially, we note that although the 1980 FTC policy statement that modified the definition of an unfair practice is now over 30 years old, the majority of states still subscribe to the *Sperry* standard for unfairness used by the FTC and federal courts prior to 1980.[52] We find especially informative those decisions interpreting a state UTPA–type statute that directs the court to give "due consideration," "weight," or "great weight" to FTC and federal court interpretations of the FTC Act.[53]

A 2009 decision from the Montana Supreme Court illustrates courts' reasoning regarding the unfairness standard. In *Rohrer v. Knudson*, the court examined whether a trial court's instruction defining "unfair practice" was a correct statement of the law.[54] Montana's statute states that "unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful," and the legislature has directed the courts to give "due consideration and weight" to interpreta-

tions of the FTC Act.[55] The *Rohrer* court recognized that the "FTC announced a new unfairness definition in 1980, which was codified by Congress in 1994"[56] but found that this was overcome by the widespread use of the *Sperry* standard.[57] The *Rohrer* court held "as a matter of law that an unfair act or practice is one which offends established public policy and which is either immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."[58]

Turning to the standard for a deceptive practice, we conclude that our case law is not in conflict with federal authorities because the definition used by the FTC and federal courts has not changed appreciably; accordingly, there is no reason to depart from our 30 years of precedent regarding the standard for evaluating deceptive practices. When it modified the deception standard in 1984, the FTC noted that it was not making a major change but rather was "articulat[ing] the factors actually used in most earlier Commission cases identifying whether or not an act or practice was deceptive, even though the language used in those cases was often couched in such terms as a tendency and capacity to deceive."[59] And many courts continue to define deceptive practices as we did in *O'Neill Investigations:* having "the

52. *See generally* NATIONAL CONSUMER LAW CENTER, UNFAIR & DECEPTIVE ACTS & PRACTICES, § 4.3.1, at 249 (7th ed. 2008) ("Most state courts use what is known as the *"S & H"* standard of unfairness developed by the FTC. . . ."); *Rohrer v. Knudson,* 349 Mont. 197, 203 P.3d 759, 763 (2009) (explaining that "[m]ost states with consumer protection acts patterned after § 5(a)(1) of the FTC Act interpret unfairness as described in the landmark United States Supreme Court case, *FTC v. Sperry & Hutchinson Co.*").

53. *See, e.g., PNR, Inc. v. Beacon Prop. Mgmt., Inc.,* 842 So.2d 773, 777 (Fla.2003) (defining an unfair practice in terms of the *Sperry* standard where FLA STAT. ANN. 501.204(2) provides that "due consideration and great weight shall be given to the interpretations of the [FTC] and the federal courts relating to [the FTC Act]"); *Balthazar v. Verizon Hawaii, Inc.,* 109 Hawai'i 69, 123 P.3d 194, 202 (2005) (applying the *Sperry* unfairness standard where the relevant statute directs that "the courts and the office of consumer protection shall give due consideration to the rules, regulations, and decisions, of the [FTC] and the federal courts interpreting section 5(a)(1) of the [FTC Act]" (HAW. REV STAT 480–2(b)));

*Rohrer v. Knudson,* 349 Mont. 197, 203 P.3d 759, 763 (2009) (discussed *infra* ); *Ames v. Oceanside Welding & Towing Co.,* 767 A.2d 677, 681 (R.I. 2001) (looking to the *Sperry* unfairness standard where the state act directs that "due consideration and great weight shall be given to the interpretations of the [FTC] and the federal courts" (R.I. GEN. LAWS § 6–13.1–3)).

54. 203 P.3d at 763.

55. *Id.* (citing MONT.CODE ANN. §§ 30–14–103, 104(1)).

56. *Id.* at 763 n. 1.

57. *Id.* at 764.

58. *Id.* (explaining that "[i]n doing so, we give due consideration and weight to interpretations of the FTC and federal courts regarding § 5(a)(1) of the FTC Act").

59. *In re Cliffdale Assocs., Inc.,* 103 F.T.C. 110, 1984 WL 565319 (1984) (internal quotation marks omitted).

capacity or tendency to deceive." [60] Under either formulation, the basic elements defining a deceptive practice have remained the same since our *O'Neill Investigations* decision:

> To show deception under the FTC Act, intent, scienter, actual reliance or damages, and even actual deception are unnecessary. All that is required is proof that a practice has a tendency or capacity (or, under the FTC's latest formulation, is likely) to deceive even a significant minority of consumers.[61]

Alaska's definition of a deceptive practice as one that has the capacity or tendency to deceive, then, does not conflict with existing federal interpretations. We thus conclude that there is no need for us to overrule *O'Neill Investigations* and its progeny. The trial court did not err when it applied the *O'Neill Investigations* standard to formulate Jury Instruction 28 and to rule on Global's post-trial motions.

### c. Application of the UTPA to this commercial dispute

■ Relying primarily on our decisions in *Western Star* and *Kenai Chrysler Center,*

Global argues that its conduct did not violate the UTPA because it did not (1) amount to an "inequitable assertion of power or position," or (2) "involve a sufficient 'level of rascality'...."

In *Western Star* we held that the UTPA may apply in the business-to-business context.[62] In that case a commercial truck manufacturer "misrepresented the consequences of an oral agreement that it made with a potential parts and service dealer." [63] The trial court found that the truck manufacturer's conduct violated the UTPA.[64] The truck manufacturer appealed, arguing that the UTPA was limited to "transactions involving consumer goods and services" and did not apply to transactions between the types of parties involved in the suit.[65] We rejected this argument,[66] observing that "while consumer protection was the dominant motive underlying the act, the act was not intended to be limited to consumer transactions." [67] We therefore affirmed the trial court's ruling.[68]

In *Kenai Chrysler Center* a dealership sold a car to a developmentally disabled young

---

**60.** *See generally* NATIONAL CONSUMER LAW CENTER, UNFAIR & DECEPTIVE ACTS & PRACTICES, § 4.2.9, at 202–03 (7th ed. 2008) ("To date, most courts interpreting state [unfair and deceptive acts and practices] statutes continue to use the capacity to deceive and not the likely to deceive standard.... This standard is valid and does not conflict with federal law."); *see also Walker v. Fleetwood Homes of N.C.,* 362 N.C. 63, 653 S.E.2d 393, 399 (2007) (applying "capacity to deceive" standard); *Columbia Physical Therapy, Inc., P.S. v. Benton Franklin Orthopedic Assocs., P.L.L.C.,* 168 Wash.2d 421, 228 P.3d 1260, 1270 (2010) ("An act is deceptive if it has the capacity to deceive a substantial portion of the public.") (internal quotation marks omitted); *but see, e.g., Millennium Commc'ns & Fulfillment, Inc. v. Office of the Attorney Gen.,* 761 So.2d 1256, 1263 (Fla.App.2000) (deception occurs "if there is a representation, omission, or practice that is likely to mislead the consumer acting reasonably in the circumstances, to the consumer's detriment"); *Courbat v. Dahana Ranch, Inc.,* 111 Hawai'i 254, 141 P.3d 427, 435 (2006) ("[W]e hereby adopt the three-prong *Cliffdale Assocs.* test in determining when a trade practice is deceptive."); *Luskin's, Inc. v. Consumer Prot. Div.,* 353 Md. 335, 726 A.2d 702, 713 (1999); *Ianelli v. U.S. Bank,* 187 Vt. 644, 996 A.2d 722, 726 (2010).

**61.** NATIONAL CONSUMER LAW CENTER, UNFAIR & DECEPTIVE ACTS & PRACTICES, § 4.2.3.1, at 190 (citing *Cliffdale,* 103 F.T.C. 110).

**62.** 101 P.3d 1047, 1053–54 (Alaska 2004).

**63.** *Id.* at 1047.

**64.** *Id.* at 1048.

**65.** *Id.* at 1048, 1050.

**66.** *Id.* at 1050–54.

**67.** *Id.* at 1052. We also quoted the House Judiciary Committee Report, which stated that the bill was "designed to meet the increasing need in Alaska for the protection of consumers *as well as honest businessmen* from the depredations of those persons employing unfair or deceptive trade practices." *Id.* (emphasis added in *Western Star* ) (quoting Judiciary Committee Report on H.C.S.C.S. for Senate Bill No. 352, House Journal Supp. No. 10 at 1, 1970 House Journal 744).

**68.** *Id.* at 1053–54.

man.[69] Acting as his guardians, the young man's parents sued the car dealership under the UTPA.[70] The jury found in favor of the family.[71] The car dealership argued on appeal that the evidence supporting the jury's finding of an unfair trade practice was insufficient as a matter of law.[72] We observed that other jurisdictions "focus on the unfairness of the disputed practice under the specific circumstances presented,"[73] and noted that the Fourth Circuit Court of Appeals "described an unfair trade practice as an 'inequitable assertion of power or position,'" ruling that '[a]lthough it may be rare that the exercise of a contractual right will meet this stringent standard, it is possible for such an exercise, when it involves egregious and aggravating conduct, to constitute an unfair ... trade practice under North Carolina's UTPA.'"[74] In light of the "flexible, case-specific approach" adopted by other jurisdictions, we concluded the evidence was sufficient to uphold the UTPA claim.[75]

According to Global, the most important aspect of *Western Star* is that "there was very real inequality in the party's positions: Western Star had control over the question whether to award a dealership to Big Iron. Big Iron was essentially a supplicant seeking a dealership." Global compares itself to the dealer in *Western Star*. Global also suggests that in *Kenai Chrysler Center* we adopted a requirement of an "inequitable assertion of power or position" for a UTPA violation, and that we "also embraced the similar requirement ... that the requisite conduct must 'have an *extortionate* quality that gives it the rancid flavor of unfairness.'" (Emphasis in original.) We disagree.

First, nowhere in *Western Star* did we suggest that relative power influenced our decision. Second, in *Kenai Chrysler Center* we recognized that although the *O'Neill Investigations* factors "require proof of something more than the mere assertion of a good faith but mistaken belief that a contract was valid,"[76] courts in other jurisdictions "have broadly interpreted similar provisions to prohibit merchants from going beyond mere assertion of mistaken beliefs by engaging in conduct that is deceptive, unethical, or unfair."[77] We cited the Fourth Circuit case (containing the "inequitable assertion" language) and the First Circuit case[78] (containing the "rancid flavor of unfairness" language) not to embrace new requirements, but because we found the broad interpretations and "flexible, case-specific approach used in these cases" persuasive.[79] Global's argument that inequitable assertion of power and extortionate conduct are always necessary for a UTPA violation runs counter to the flexible, factor-based approach which we adopted in *O'Neill Investigations* and reaffirmed in *Kenai Chrysler Center*,[80] and which remains in force today.

### d. Application of the UTPA to litigation activity in this case

■ GVEA asked the jury to award damages for its "review of withdrawn claims." GVEA presented evidence of employee time incurred in reviewing and denying Global's RFIs in 2002 and 2003, prior to the litigation, which it calculated to be $7,420. GVEA also presented evidence of $90,966 of employee and expert consultant time expended to re-

---

**69.** 167 P.3d 1240, 1245 (Alaska 2007).

**70.** *Id.* at 1246.

**71.** *Id.* at 1247.

**72.** *Id.* at 1255.

**73.** *Id.* at 1256 (citing *St. Paul Fire & Marine Ins. Co. v. Ellis & Ellis*, 262 F.3d 53, 66 (1st Cir. 2001)).

**74.** *Id.* (quoting *S. Atl. Ltd. P'ship of Tenn., L.P. v. Riese*, 284 F.3d 518, 539 (4th Cir.2002)).

**75.** *Id.*

**76.** *Id.* at 1256.

**77.** *Id.*

**78.** *St. Paul Fire & Marine Ins. Co.*, 262 F.3d at 66.

**79.** *Kenai Chrysler Ctr., Inc.*, 167 P.3d at 1256.

**80.** *Id.* at 1255 (quoting *State v. O'Neill Investigations*, 609 P.2d 520, 535 (Alaska 1980)) ("A variety of factors can be considered in determining the existence of an unfair practice, including [the three factors mentioned in *O'Neill Investigations* ].").

view and defend against Global's litigation claims through early 2006, when Global reduced its claims after changing the calculation methodology. GVEA's total request was $98,386, the exact jury award.

Global argues that its litigation decision to recalculate its damages claims, and specifically to withdraw portions of its original claims, is not an unfair trade practice under the UTPA. Global contends that it would be poor public policy to penalize and thus discourage parties from withdrawing or modifying contract claims during the litigation process. Global points out the irony that had it not withdrawn portions of its claims, GVEA could not have claimed damages for "review of withdrawn claims," even though GVEA might have successfully defended against them. GVEA responds that "Global utilized deceptive claims machinations" during "the course of the litigation" but otherwise does not address Global's arguments.

Although we disagree with Global that its mid-litigation withdrawal and recalculation of damages were necessarily key to GVEA's UTPA claim, we also disagree with GVEA's inclusion of litigation actions in its UTPA claim. GVEA may not pursue *in this litigation* a claim for damages under the UTPA for actions undertaken by Global *in this litigation*.[81] Nor may GVEA *in this litigation* request a jury award of damages, under any theory, for expenses incurred in defending against Global's claims *in this litigation*.[82] But GVEA may pursue a UTPA claim for: (1) pre-complaint damages and (2) post-complaint damages it contends were caused by Global's allegedly falsified RFIs. Those damages must be unrelated to the preparation and cost of its defense against Global's claims in this litigation. To the extent the trial court's denials of Global's motions for direct-

ed verdict and judgment notwithstanding the verdict are inconsistent with this conclusion, they are reversed—the $90,966 portion of the jury award for GVEA's expenses incurred in defending this litigation cannot stand.

### e. Conclusion

Although GVEA appropriately pursued a UTPA claim for damages arising from Global's presentation of allegedly falsified RFIs, GVEA should not have been permitted to recast Global's litigation activity as a UTPA claim or GVEA's own litigation expenses as UTPA damages in this litigation. We therefore affirm the jury's verdict only for the $7,420 in pre-litigation compensatory damages under the UTPA, vacating the remainder of the verdict.

### B. Global Is Entitled To A New Trial On Causation And Damages Arising From GVEA's Breach Of NI-9.

#### 1. Standard of review

■■■ We set forth in *Grant v. Stoyer* the standard for reviewing denial of a new trial motion:

> The decision to grant or deny a new trial is within the trial court's discretion. We will only reverse a decision to deny a new trial "if the evidence supporting the verdict was so completely lacking or slight and unconvincing as to make the verdict plainly unreasonable and unjust." In conducting our review, we view the evidence in the light most favorable to the nonmoving party.[83]

■■ In that case we affirmed a longstanding rule that "where negligence and causation of compensable physical injury are conceded or proved, and where evidence of at least some pain and suffering is substantial

---

**81.** *Cf. Meidinger v. Koniag, Inc.*, 31 P.3d 77, 86 (Alaska 2001) (citing *DeNardo v. Michalski*, 811 P.2d 315, 317 (Alaska 1991)) (noting "actions taken in the regular course of litigation ... cannot be a proper basis for an abuse of process claim"); *Kollodge v. State*, 757 P.2d 1024, 1025 n. 2 (Alaska 1988) (stating party cannot make claim for malicious prosecution unless earlier proceeding has terminated in party's favor). If at the conclusion of litigation the trial court finds Global acted improperly during the course of the litigation, it can impose sanctions for that mis-

conduct, including awards of enhanced costs and attorney's fees.

**82.** *Sisters of Providence v. A.A. Pain Clinic, Inc.*, 81 P.3d 989, 1008 (Alaska 2003) (stating neither party's time preparing nor attorney's fees for work litigating can be considered damages in same litigation).

**83.** 10 P.3d 594, 596 (Alaska 2000) (footnotes omitted) (citing *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999)).

and uncontroverted, some damages must ordinarily be awarded."[84] We held that a jury's failure to award damages in that context requires a new trial,[85] but we distinguished a case where "there was a legitimate fact dispute about whether the ... victim had suffered *any* injury or damages."[86] The damages rule stated in *Grant* is equally sound in both tort and contract contexts.[87]

### 2. Global's motion for a new trial on NI–9 damages

The jury found that GVEA breached its contractual obligations under NI–9 but that GVEA's breach was not the legal cause of any damages to Global. Global moved for a new trial on damages, arguing that in light of the undisputed evidence of GVEA's breach, no reasonable juror could have concluded that GVEA was not the legal cause of some damages. Global asserted that under *Grant v. Stoyer*, a new trial was the only available remedy.

Global recounted trial evidence of instances when GVEA failed to deliver complete, undamaged, or specification-compliant materials as required by the contract. Global also pointed to GVEA's failure to provide updated erection drawings for river crossing towers until after Global had been unable to erect the towers based on outdated drawings GVEA provided. Global identified this error as "probably the biggest part of its delay damages."

GVEA conceded it had breached NI–9 by late delivery of owner-supplied materials. But GVEA argued: (1) that Global was not really delayed because Global completed the project within the time projected in its original bid; (2) that Global was unable to quantify any alleged delay damages; and (3) that Global itself caused any alleged delay damages through poor contract management.

Global replied by reiterating undisputed difficulties arising from GVEA's late delivery

of materials and specifications and referring to its Exhibit 192, a claim summary quantifying its damages. Global's discussion and Exhibit 192 included a line item of "$7,369 for installation of a gate at the Tanana River."

The trial court denied Global's motion for a new trial on damages, finding:

> Substantial evidence supports the jury's conclusion that GVEA's breach of contract was not the legal cause of any damages to Global. Among this evidence is that cited by GVEA in its opposition. Additionally, other evidence questioned the credibility of Global's witnesses, their analyses, and their conclusions. The jury had enough evidence upon which to reject the testimony of Global's witnesses by not attaching credibility or giving it little weight. The verdict is not against the weight of the evidence.

### 3. Global's appeal

 Global contends that the trial court abused its discretion by denying Global's motion for a new trial on damages. Global reiterates its trial court arguments, primarily asserting that given the undisputed evidence of construction difficulties resulting from GVEA's untimely delivery of materials for the project, no reasonable juror could have concluded that GVEA's contractual breach was not the legal cause of some damages. GVEA responds, as it did below, by asserting that evidence in the record supports the jury's finding that GVEA's contractual breach did not legally cause any quantifiable damages.

It is readily apparent that the jury found Global's witnesses and evidence less than credible. The trial court observed the witnesses and evidence, observed the presentation of the parties' cases, and concluded that the jury could have found that although GVEA breached its contractual obligations, its breach was not the legal cause of any

---

84. *Id.* at 598.

85. *Id.* at 599.

86. *Id.* at 598–99 (emphasis in original) (citing *Richey v. Oen*, 824 P.2d 1371, 1375–76 (Alaska 1992)).

87. *Cf. Spruce Equip. Co. v. Maloney*, 527 P.2d 1295, 1301 (Alaska 1974) (stating avoidable consequences rule applies in tort or contract).

damages to Global.[88] We must view the evidence in the light most favorable to GVEA, and we also defer to the trial court's discretion to deny a motion for a new trial unless the verdict is "plainly unreasonable and unjust." [89]

Nonetheless, we cannot reconcile the jury's findings. GVEA expressly conceded that it breached NI–9 through untimely delivery of materials. GVEA implicitly conceded that it breached NI–9 through failing to provide proper materials and to compensate Global for installing a gate on the north bank of the Tanana River. GVEA's argument that Global's mismanagement of time and resources caused its damages might be persuasive as to matters of delay but cannot provide a defense with respect to either Global's uncontradicted evidence of duplicated effort caused by improper materials or GVEA's admitted non-payment for the gate. Although GVEA's arguments may demonstrate that the jury could reasonably have disputed the amount of damage caused by the breaches, there can be no dispute that the breaches caused Global some damage. In light of the evidence presented, the jury's finding of no legal causation is "plainly unreasonable and unjust." [90]

We therefore remand for a new trial on causation and damages arising from GVEA's breach of NI–9.

### C. Attorney's Fees Issues.

#### 1. Standard of review

■ We review an award of attorney's fees for abuse of discretion.[91] But the interpretation of statutes and rules—such as the UTPA's attorney's fees provision and Rule 68—presents a question of law to which we apply our independent judgment.[92]

#### 2. UTPA attorney's fees award

■ Alaska Statute 45.50.537(a) provides: "In an action brought by a private person under [the UTPA], a prevailing plaintiff shall be awarded ... full reasonable attorney fees at the prevailing reasonable rate." Thus, a plaintiff who prevails on a claim brought pursuant to the Alaska UTPA is entitled to an award of full reasonable attorney's fees.[93] Because we are vacating in part the judgment in favor of GVEA· on its UTPA claim, we also vacate the trial court's award of attorney's fees under AS 45.50.537(a) and remand for a fresh fee determination.[94]

88. *See Estate of Smith v. Spinelli*, 216 P.3d 524, 528 (Alaska 2009) (quoting *Peterson v. Ek*, 93 P.3d 458, 463 (Alaska 2004)) ("[I]t is the province of the trial court to judge witnesses' credibility and weigh conflicting evidence.").

89. *Grant v. Stoyer*, 10 P.3d 594, 596 (Alaska 2000) (quoting *Pugliese v. Perdue*, 988 P.2d 577, 581 (Alaska 1999)).

90. *Id.*

91. *Bromley v. Mitchell*, 902 P.2d 797, 804 (Alaska 1995).

92. *Mackie v. Chizmar*, 965 P.2d 1202, 1204 (Alaska 1998).

93. *Kenai Chrysler Ctr., Inc. v. Denison*, 167 P.3d 1240, 1260 (Alaska 2007).

94. GVEA has filed a related cross-appeal, arguing that the superior court erred by requiring GVEA to segregate the portion of its attorney's fees arising from its UTPA claim. It argues that "when a party brings [a UTPA] claim as one claim among many," and prevails on the UTPA claim, that party is entitled to full attorney's fees on *all* of its claims. This argument is without

merit. As Global maintains, "the UTPA attorney's fees provision is intended only to facilitate a party's ability to prosecute UTPA claims. The fact that a party is a 'UTPA litigant,' in the sense that the party is asserting a UTPA claim, does not transmute the party's non-UTPA claims into claims for which the party is entitled to an award of full, reasonable attorney's fees."

Here the superior court awarded GVEA one quarter of its total attorney's fees. The court reasoned that there were four different claims at trial, and that GVEA's attorney's "block billing" practices made it impossible to distinguish with any precision how much was spent on each claim. In *Kenai Chrysler Center*, 167 P.3d at 1261, we noted that "the UTPA's full reasonable fee provision gave the superior court ... broad discretion to decide whether the [prevailing party's] proposed fees were reasonable under the totality of the circumstances presented." But because we are remanding the case for a new trial on causation and damages on Global's NI–9 claim and for a redetermination of GVEA's UTPA fees without regard to work performed on the disallowed claims relating to litigation activities in this case, we do not need to address the question whether the amount of the trial court's fee award on the UTPA claim was reasonable.

### 3. Rule 68 attorney's fees award

Because we are vacating in part GVEA's judgment and remanding for further proceedings on Global's claims regarding NI-9, we vacate GVEA's Rule 68 attorney's fees award. To assist the parties in evaluating the case on remand and to avoid an unnecessary second appeal of the issue, we will consider whether GVEA's December 2004 offer was a valid Rule 68 offer of judgment.

In December 2004 GVEA made an offer "to allow entry of Judgment in favor of [Global] for Seven Hundred and Fifty Thousand Dollars ($750,000.00) . . . contingent on the [consolidated lawsuits] being dismissed with prejudice."

When GVEA sought an award of attorney's fees under Rule 68 after trial, Global asserted that GVEA's offer was not a valid Rule 68 offer of judgment. Global argued that because "it did not provide for the entry of judgment against GVEA" it was only "a settlement offer, rather than an offer of judgment." Global acknowledged that the "offer suggested that it would allow entry of judgment in Global's favor in the amount of $750,000," but noted that it "was expressly 'contingent' on the two consolidated cases 'being dismissed with prejudice.'" Global concluded that "the 'non-monetary provisions' in GVEA's 'offer of judgment'—the requirement that Global dismiss the pending cases with prejudice—defeated the very purpose of an offer of judgment: to provide for the entry of a binding, enforceable *judgment* in favor of the offeree." (Emphasis in original.)

GVEA responded that the offer met the requirements of Rule 68. GVEA relied on a number of California cases holding that under California's offer of judgment rule, an offer may state a proposed payment in return for a dismissal with prejudice. Although the trial court had previously described GVEA's offer as "offering to pay Global the amount of $750,000"—and, expressly, not as "offering judgment in the amount of $750,000"—the trial court stated it was persuaded by GVEA's California cases and that "no particular language" for a Rule 68 offer is required. The trial court determined GVEA's offer was therefore neither indefinite nor ambiguous and was a valid Rule 68 offer of judgment. The trial court awarded attorney's fees under the rule.

On appeal the parties raise the same arguments. In its brief, GVEA described its offer as "offering to pay Global $750,000 in exchange for dismissal with prejudice of both cases" and relied on the California cases holding this language sufficient for an offer of judgment.

After oral argument in this case, we issued our decision in *Sayer v. Bashaw*.[95] In that case the defendant tendered a purported Rule 68 offer of judgment to pay the plaintiff a sum certain in return for the immediate dismissal of the plaintiff's lawsuit with prejudice.[96] The plaintiff did not accept the offer and the defendant later prevailed at trial.[97] After post-trial motions the trial court ruled the defendant's purported Rule 68 offer was invalid and declined to award Rule 68 attorney's fees.[98] On appeal we held that under our statutory and rule framework a Rule 68 offer of judgment "must allow for entry of judgment, not merely dismissal with prejudice."[99] We rejected the California line of cases allowing offers for dismissal with prejudice in lieu of an entry of judgment to be valid offers of judgment.[100]

Here the trial court expressly stated that GVEA's offer was an offer to pay, not an offer of judgment. In its brief GVEA described its offer as an offer to pay Global in return for a dismissal of the litigation with prejudice. Oral arguments failed to clarify the consequences of accepting GVEA's offer. At best whether GVEA's offer provided for judgment or payment is ambiguous; at worst the offer provided for payment and not judg-

---

**95.** 214 P.3d 363 (Alaska 2009).

**96.** *Id.* at 364.

**97.** *Id.*

**98.** *Id.*

**99.** *Id.* at 363.

**100.** *Id.* at 365–66.

ment. Either way, it was not a valid Rule 68 offer of judgment,[101] and we reverse the trial court's ruling to the contrary. Having done so, we do not need to decide Global's related arguments about the application of Rule 68's attorney's fees provision to post-judgment efforts.

## IV. CONCLUSION

We AFFIRM IN PART and VACATE IN PART the judgment entered in favor of GVEA against Global and REMAND for (1) a fee determination regarding GVEA's UTPA claim against Global and (2) a new trial on causation and damages relating to GVEA's breach of NI–9.

---

**101.** *See id.; Thomann v. Fouse,* 93 P.3d 1048, 1050 (Alaska 2004) (stating Rule 68 offer of judg-ment "must be definite").